**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff, Appellee,**

v.

**Jose R. RIVERA–ARROYO, et al., Defendants, Appellants.**

No. 89–2026.

United States Court of Appeals, First Circuit.

Heard March 8, 1990.

Decided June 29, 1990.

David W. Román, with whom José A. Rivera–Reyes, San Juan, P.R., was on brief, for defendants, appellants.

Gabriel Hernández–Rivera, Old San Juan, P.R., with whom John David Ferrer, Counsel, Santurce, P.R., Rae Schupack, Regional Counsel, New York City, Nancy Pujals, Sr. Atty., Federal Deposit Ins. Corp., Santurce, P.R. and Feldstein, Gelpi, Hernández & Gotay, Old San Juan, P.R., were on brief, for plaintiff, appellee.

Before TORRUELLA and SELYA, Circuit Judges, and RE,* Judge.

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

**TORRUELLA, Circuit Judge.**

This is an appeal from the order of the United States District Court for the District of Puerto Rico entering summary judgment against appellant, José R. Rivera–Arroyo. For the reasons stated below, we affirm the decision of the district court.

## I. BACKGROUND

The instant appeal involves an action for the collection of debts by the Federal Deposit Insurance Corporation ("FDIC"), in its corporate capacity, on promissory notes it purchased upon the closing of Girod Trust Company ("GIROD"), a financial institution closed by the Secretary of the Treasury of Puerto Rico. The FDIC sued Bracero and Rivera, Inc. ("BRACERO"), Colony Construction Corporation ("COLONY"), José R. Rivera–Arroyo, his wife, Myrna Landrón–Náter, and their conjugal partnership ("RIVERA") for an aggregate amount of $4,369,631.33. The complaint consisted of the following counts:

**Count I—** Covered a personal loan to RIVERA for $122,133.87.

**Count II—** Covered a commercial, unsecured loan to BRACERO for $1,993,-809.82.

**Count III—** Covered a commercial loan to BRACERO in the amount of $1,000,-000, secured by a personal promissory note executed by RIVERA.

**Count IV—** Prayed for the foreclosure of a chattel mortgage executed by BRACERO in the amount of $600,000.

**Count V—** Covered a continuing letter of guarantee executed by RIVERA in the principal amount of $3,386,470.

**Count IV—** Covered a commercial, unsecured, loan to COLONY in the principal amount of $744,941.03.

On July 8, 1985, the FDIC attached a savings certificate, payable to Bearer, in the amount of $100,000, pursuant to a writ of attachment issued by the district court. On September 26, 1985, the district court granted RIVERA's motion for summary judgment dismissing Count V.

On November 21, 1985, the FDIC filed motions for summary judgment as to Counts I, II, and VI, and the motions were opposed. A United States Magistrate entered a "Report" with the recommendation that judgment for FDIC be entered as to those counts. On December 5, 1986, the FDIC filed a motion for summary judgment on Count III.

On September 8, 1989, the district court entered judgment for FDIC against BRACERO and RIVERA as to Counts I, II and III, and against COLONY as to Count VI. Because only BRACERO and RIVERA filed a notice of appeal, this judgment is final and unappealable as to COLONY. Fed.R.App.P. 4. Although in their notice of appeal appellants state that they appeal from "the judgment entered on September 8, 1989," in the brief submitted to this court, they fail to make any argument concerning Count II or Count IV.[1] Thus, we address appellants' arguments only with regard to Counts I and III.

## II. PROPRIETY OF ENTERING SUMMARY JUDGMENT ON COUNTS I AND III

### A. *Count III*

 It is uncontroverted that José Rivera executed and delivered to the now defunct Girod Trust Company a promissory note dated December 29, 1983, in the principal amount of $1,000,000, to cover a commercial loan to BRACERO for that same amount, and that the FDIC purchased the note upon the closing of GIROD. Thus, the only issue on appeal is whether there is a genuine issue of material fact as to

---

**1.** Federal Rule of Appellate Procedure 28(a)(4) states, with regard to appellant briefs, that "the argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor...." This court, as well as many others, has stated that we will not ordinarily consider issues which are not raised or argued in the brief. *Pignons S.A. De Mecanique v. Polaroid Corp.,* 701 F.2d 1, 3 (1st Cir.

1983). *See, e.g., Bledsoe v. Garcia,* 742 F.2d 1237 (10th Cir.1984); *Chicago & West Indiana R. Co. v. Motorship Buko Maru,* 505 F.2d 579 (7th Cir.1974); *Brown v. Sielaff,* 474 F.2d 826 (4th Cir.1973); *Pedicord v. Swenson,* 431 F.2d 92 (8th Cir.1970); 9 Moore's Federal Practice ¶ 228.02 [2.–1] at 28–7, 28–8 (1989–90). There appears to be no reason to deviate from this general principle in the instant case.

whether Rivera executed the note in his personal capacity, as the FDIC claims it appears on the face of the note, or, as Rivera claims, as a representative for a corporation.

Despite appellants' arguments that the district court failed to view the evidence in the light most favorable to the nonmovants, that is, to themselves, we find that there was no genuine issue of material fact about the capacity in which Rivera signed, and thus that summary judgment was properly granted. Although appellants assert that there were two affidavits supporting their contention that the BRACERO mortgage was signed by Rivera in his personal capacity, as well as Girod Trust Company documents revealing the corporate nature of the debt, we find that, regardless of the evidence presented, there is no genuine issue of material fact in light of *Rodríguez Vidal v. Benvenutti*, 115 D.P.R. 583 (1984).

*Rodríguez Vidal v. Benvenutti*, 115 D.P.R. 583, is dispositive. There, the Supreme Court of Puerto Rico held that:

> in situations involving notes or other types of obligations, which only seek to link a corporation, such limitation must stem and expressly appear from the text of the main document and not from the notarial acknowledgment form. The intent and substance of the document cannot be left in the hands of the notary.

*Id.* at 590. *Rodríguez Vidal* presented a novel issue in Puerto Rico. In that case, the signatories of a promissory note executed in 1981 alleged that they were not personally liable on the obligation because—although not so stated in the body of the note—they had executed the same on behalf of a corporation. During the course of the litigation, the signatories relied on the statement made by the notary public in the note's affidavit that they were

signing in their character as president and treasurer of a corporation.[2]

In this case, like in *Rodríguez Vidal*, Rivera signed the note solely with his personal signature, "José Rivera Arroyo." Although, on the same piece of paper, the notary public noted the position of Rivera as being the president of Bracero & Rivera, and the cover of the document lists the corporation as the debtor, under *Rodríguez Vidal* this is not sufficient to hold the corporation responsible for the debt. *Id.* at 590. We need go no further.[3]

### B. *Count I*

■ Appellants next argue that the district court failed to analyze all the facts related to the personal loan of José Rivera–Arroyo. Rivera–Arroyo argues that he was willing to make payment on the loan, subject to the devolution of certain guarantees given to Girod Trust. He argues, however, that these guarantees never had either legal existence or significance because of the closing of Girod Trust Company, and essentially that the FDIC should have returned the documents to him.

We find this argument in error. Whether or not the FDIC was in rightful possession of the documents or whether the documents had legal significance is immaterial with regard to Rivera's liability under the loan agreement which is the subject of Count I. The FDIC's motion for summary judgment was supported by four documents: a certified copy of the promissory note in the principal amount of $122,133.87 executed by José R. Rivera–Arroyo; a certified copy of the FDIC's purchase of said note; and a statement under penalty of perjury attesting to the fact that the FDIC purchased that note. Moreover, Rivera stipulated to those facts, as well as to the fact that he had made two partial payments, and that he offered to pay the bal-

---

2. According to our analysis, the only factual difference between *Rodríguez Vidal* and this case appears to be that, in *Rodríguez Vidal*, the officers were not authorized to sign on behalf of the corporation. Whether this is a material difference was not addressed by the parties in the instant appeal, and we therefore hold that it is not.

3. Although appellants argue that the district court erroneously concluded that Rivera's spouse and the conjugal partnership did not controvert the motion for summary judgment, finding, as we do, that summary judgment was properly granted as a matter of law, we need not address this issue.

ance due on the condition that certain other collateral documents be returned to him. The district court properly granted summary judgment to the FDIC with reference to Rivera's liability, and appellants fail to demonstrate that this was error.

## III. APPLICATION OF 12 U.S.C. § 1823(e)

■ Rivera's last argument is that the district court erroneously interpreted 12 U.S.C. § 1823(e) to apply to the instant case.[4] Appellant contends that the purpose of 12 U.S.C. § 1823 is to protect the FDIC from fraud, because it essentially provides that secret agreements are unenforceable as against the FDIC. *See F.D.I.C. v. Ponce*, 904 F.2d 740, 745 (1st Cir.1990). *See also D'Oench, Duhme v. F.D.I.C.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). According to appellants, although the agreements were in writing, the FDIC refused to accept them as valid, and the district court failed to adequately analyze the evidence and to give reasons why the agreements failed to comply with statutory requirements.

The FDIC argues that the district court properly ruled that written agreements offered as evidence by appellants were not executed by the closed Girod Trust Company, not approved by its Board of Directors and were not part of the Trust Company's records. Thus, it avers, the documents are invalid as to the FDIC pursuant to 12 U.S.C. § 1823(e). We agree. The district court found that "[n]one of the seven release agreements dated April 13, 1984, on which defendants claim to have been released by GIROD was executed by GIROD." Moreover, two different United States Magistrates, as well as the district court, gave serious consideration and analysis to the written agreements offered in evidence by the appellants and they each concluded that the documents were unsigned by the closed bank and thus invalid as to the FDIC. Examination of the last page of the two agreements which appellants claim to have been signed by GIROD confirms that they contain no signature on behalf of GIROD. The district court did not err in concluding that the requirements of 12 U.S.C. § 1823(e) were not met, and thus, that the agreements were invalid as to the FDIC.

## IV. CONCLUSION

■ For the reasons stated above, we *affirm* the decision of the district court in all respects. Additionally, we find egregious violations of Rule 3.3(a)(1) of the Model Rules of Professional Conduct of the American Bar Association, made applicable to practice before the United States District Court for the District of Puerto Rico by Local Rule 211.4(b). Appellants' attorney's continual assertion that certain agreements were executed by the closed Girod Trust Company and that they were approved by the Board of Directors, when the documents submitted to this court clearly evidence that this is not the case, obviously violates an attorney's duty of candor to courts. Accordingly, we assess double costs and attorneys' fees in the amount of $5,000.00 against appellants' *counsel.*

*Affirmed.*

---

**4.** 12 U.S.C. § 1823(e) provides:
No agreement which tends to diminish or defeat the interest of the [Federal Deposit Insurance] Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan, or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
 (1) is in writing,
 (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
 (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
 (4) has been, continuously, from the time of its execution, an official record of the depository institution.