FDIC v. O'Flaven                        CV-91-433-B    04/08/94

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Federal Deposit Ins. Corp.,
  as Liquidating Agent for Hillsborough
Bank and Trust Co.

        v.                              Civil No. 91-433-B

Kathleen O'Flahaven, et al.

                        O R D E R

     Teksource, Inc., a Massachusetts corporation, borrowed

$400,000 from Hillsborough Bank and Trust.  Defendants Kathleen

O'Flahaven, Teksource's President, and Percy Fennell, Chair of

Teksource's Board of Directors, signed the loan papers.

Hillsborough Bank was declared insolvent and its assets assumed

by the Federal Deposit Insurance Corporation (FDIC).  Teksource

is also insolvent and has failed to pay its loan from

Hillsborough.  Asserting that O'Flahaven and Fennell signed the

loan in their individual capacities and not simply as corporate

agents, the FDIC brought this action against O'Flahaven and

Fennell to collect the Teksource loan.

     Primarily relying on 12 U.S.C. § 1823(e) and the doctrine

established in D'Oench, Duhme & Co. v. FDIC, 313 U.S. 447 (1942),

the FDIC moves for summary judgment asserting that the defendants

are prima facie liable and that their defenses are insufficient

as a matter of state and federal law.  For the reasons set forth

below, the motion is GRANTED in part and DENIED in part.

## I.	Overview of D'Oench, Duhme and 12 U.S.C. § 1823(e)

The doctrine established by D'Oench, Duhme is deceptively simple to repeat -- it bars defenses based on "arrangement[s] whereby the banking authority . . . was or was likely to be misled." In re 604 Columbus Ave. Realty Trust, 968 F.2d 1332, 1344 (1st Cir. 1992), quoting D'Oench, Duhme, 317 U.S. at 460. Congressional codification of this common law doctrine, 12 U.S.C. § 1823(e), requires that certain agreements with a federally insured bank meet specific conditions in order to be enforceable against the FDIC.  Here, however, the parties do not so much dispute what D'Oench, Duhme and § 1823(e)[1] say as much as they question whether they properly apply.

Although D'Oench, Duhme and § 1823(e) have been widely elaborated upon in First Circuit opinions, their application has not been definitively resolved as to some of the defenses raised here.  Yet the general boundaries in which the doctrines apply seems clear:  they bar claims or defenses based upon matters outside the bank's official records that would render the note

---

[1]	The First Circuit treats § 1823(e) and D'Oench, Duhme as essentially coextensive. FDIC v. Longley I Realty Trust, 988 F.2d 270, 273 (1st Cir. 1993). See also In re 604 Columbus Ave. Realty Trust, 968 F.2d 1332, 1346 (1st Cir. 1992). Cf. Bateman v. FDIC, 970 F.2d 924, 927 (1st Cir. 1992) ("the statute and the D'Oench, Duhme federal common law are not necessarily coextensive"), Beener v. LaSala, 813 F.Supp. 303, 307 n.3 (D.N.J. 1993) (D'Oench, Duhme is only a rule of equitable estoppel whereas § 1823(e) applies only to "agreements").

2

voidable, but not void. An implicit corollary is that defenses based on matters that are part of the bank's records, <u>FDIC v. Bracero & Rivera, Inc.</u>, 895 F.2d 824, 827-30 (1st Cir. 1990), <u>Commerce Fed. Sav. Bank v. FDIC</u>, 872 F.2d 1240, 1246 (6th Cir. 1989), or defenses that would render the asset void <u>ab</u> <u>initio</u>, such as fraud in the factum, <u>Langley v. FDIC</u>, 484 U.S. 86, 91-94 (1987), <u>In re 604 Columbus Ave. Realty Trust</u>, 968 F.2d at 1346, are not precluded by <u>D'Oench, Duhme</u> or § 1823(e).

**II.   The Evidence Relevant to the Motion and Opposition**

A major defect with the instant motion is the dearth of evidence submitted by either side. "The moving party invariably bears both the initial and the ultimate burden of demonstrating its legal entitlement to summary judgment." <u>Lopez v. Corporación Azucarera de Puerto Rico</u>, 938 F.2d 1510, 1516 (1st Cir. 1991). For issues where the moving party will not bear the burden of proof at trial, the Supreme Court somewhat relaxed the moving party's burden in initially supporting its summary judgment motion -- it need only identify an element of the opposing party's case that it claims is unsupported by any evidence. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

This relaxed standard for moving parties under <u>Celotex</u>, however, only applies to issues on which the moving party will not bear the burden of proof at trial. <u>Lopez</u>, 938 F.2d at 1516-

3

17, <u>Penelope v. Brown</u>, 792 F.Supp. 132, 136 n.5 (D.Mass. 1992). Where a party will ultimately bear the burden of proof at trial, to prevail on summary judgment, that party must discharge its burden to establish the sufficiency of its claims -- including providing evidentiary support. <u>Lopez</u>, 938 F.2d at 1516-17, <u>Penelope</u>, 792 F.Supp. at 136 n.5.

To defeat summary judgment, the opposing party -- at least on issues where it will bear the burden of proof at trial -- "must present definite, competent evidence to rebut the motion." <u>Pagano v. Frank</u>, 983 F.2d 343, 347 (1st Cir. 1993). In other words, the opposing party must present "enough competent evidence to enable a finding [at trial] favorable to the nonmoving party." <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 826, 842 (1st Cir. 1993). Implicit in these requirements is that the evidence must, at a minimum, be provided to the Court.

Here, both sides attempt to rely upon affidavits filed in proceedings that took place before the state court but are not part of this Court's files. The Court cannot simply take judicial notice of these affidavits because, in the first place, they are not even provided to the Court. <u>Cf.</u> <u>E.I. DuPont de Nemours & Co. v. Cullen</u>, 791 F.2d 5, 7 (1st Cir. 1986), <u>In re Delmarva Sec. Litig.</u>, 794 F.Supp. 1293, 1299 (D.Del. 1992) (judicial notice of public records permissible "if they are

4

provided to the Court by the party seeking to have them considered"). Furthermore, even if judicial notice were justified, its scope is far more limited that the parties appear to appreciate. The Court could not judicially notice the veracity of the allegations in the affidavits; it could only take notice that the affidavits were in fact filed and that the factual averments were in fact made. E.I. DuPont, 791 F.2d at 7, Liberty Mut. Ins. Co. v. Rotches Pork Packers, 969 F.2d 1384, 1388-89 (2d Cir. 1992) (judicial notice is "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings"). This, however, is no substitute for an affidavit filed in this proceeding setting forth specific allegations in connection with the instant federal case and the instant motion.

Similarly, Fennell's blanket verification of his attorneys' memorandum of law is also insufficient as it "is in no way the evidentiary affidavit called for in the rule." FDIC v. Roldan Fonseca, 795 F.2d 1102, 1106 (1st Cir. 1986). See also Lopez, 938 F.2d at 1515 & n.11.

Thus, although the FDIC may have satisfied its initial burden as to summary adjudication of some of the defendants' defenses, in order to establish its entitlement to judgment, the FDIC could not simply rely on the relaxed standard of Celotex but

5

was obliged to provide evidence supporting its underlying claims.

Fortunately, the lack of particularized affidavits by either side is not an insurmountable obstacle. As explained below, D'Oench, Duhme and 12 U.S.C. § 1823(e) essentially require that most of the issues raised in this motion be determined based on the documents comprising the loan package. Thus, much of the extrinsic evidence proffered by defendants would be irrelevant even if contained in an affidavit. As to the proposed fraud defenses, the absence of specific evidence is again not fatal because, even if treated as an offer of proof, since they do not transcend simple fraud in the inducement, the proposed defenses remain insufficient as a matter of law. Ultimately, however, since the FDIC has failed to provide proof that the loan was actually disbursed -- as compared to the bank's promises contained in the loan contract itself -- it has failed to establish entitlement to summary judgment.

**III. D'Oench, Duhme Precludes Defenses Relating to the Capacity in Which the Notes were Signed Only to the Extent the Defenses Are Based on Evidence Outside of the Bank's Official Records**

A.    The Capacity Problem

Although not definitively resolved, the First Circuit has suggested that questions of representative/individual capacity may well be outside the scope of D'Oench, Duhme and § 1823(e). FDIC v. Caporale, 931 F.2d 1, 3 (1st Cir. 1991), FDIC v. Rivera-

6

<u>Arroyo</u>, 907 F.2d 1233, 1235 (1st Cir. 1990).  "Neither the <u>D'Oench</u> doctrine nor § 1823(e) bars the assertion of a claim or defense that does not depend on an agreement." <u>RTC v. Carr</u>, 13 F.3d 425, 429 (1st Cir. 1993).  Thus, depending upon the evidence used to prove the capacity in which the signature was given, this would be entirely consistent with the purposes and rules laid forth in <u>D'Oench, Duhme</u> and § 1823(e).

For example, the FDIC could not legitimately claim to be hindered in evaluating a bank's solvency when the notes unequivocally identify the borrower as the corporate entity and where the signatures unequivocally indicate that persons have signed only in their representative capacities.  This determination would not be based on any side agreement and, thus, would not be precluded under <u>D'Oench, Duhme</u>. <u>Carr</u>, 13 F.3d at 429.  On the other hand, allowing borrowers to introduce parol evidence to show that a facially unequivocal signature in one's individual capacity was actually subject to a bank officer's interpretation that it was a corporate signature would be as inconsistent with <u>D'Oench, Duhme</u> and § 1823(e) as giving effect to a side agreement with the bank that the personal note would only be collected through the corporate entity.  This exclusion of parol evidence is reinforced by <u>D'Oench, Duhme</u>'s policy "favor[ing] the interests of depositors and creditors of a failed

bank, who cannot protect themselves from secret agreements, over the interests of borrowers, who can." <u>Timberland Design v. First Serv. Bank for Savings</u>, 932 F.2d 46, 48 (1st Cir. 1991).

Here, Fennell and O'Flahaven support their capacity defenses with a combination of both types of evidence -- i.e., the promissory note and the related loan records as well as extrinsic evidence. The latter type of evidence, "not visible to FDIC officials on the face of the documents to which they must refer in determining the value of assets they have acquired, should not, under the <u>D'Oench, Duhme</u> rationale," be considered in determining the capacity in which the signatures were given. <u>FDIC v. Singh</u>, 977 F.2d 18, 24 (1st Cir. 1992).

<u>B.   The Capacity in Which the Notes were Signed is a Question of Fact To Be Resolved Under Federal Law</u>
<u>1.   Personal or corporate capacity should be resolved under federal, not state, law</u>

The parties focus on state law as the authoritative source for determining whether O'Flahaven or Fennell rendered themselves personally liable on the note at issue. While this may have been appropriate when the dispute was between the bank and the defendants, with the presence of federal regulators comes the application of federal law as well. 12 U.S.C. § 1819. <u>See</u> <u>Roldan Fonseca</u>, 795 F.2d at 1106 ("Federal law governs cases where . . . the FDIC . . . sues to collect assets acquired from the receiver of an insured bank."). <u>Accord</u> <u>FDIC v. Municipality of Ponce</u>, 904

8

F.2d 740, 745 (1st Cir. 1990), <u>FDIC v. P.L.M. Int'l</u>, 834 F.2d 248, 252 (1st Cir. 1987), <u>Santoni v. FDIC</u>, 677 F.2d 174, 177-78 (1st Cir. 1982). <u>Cf.</u> <u>Rivera-Arroyo</u>, 907 F.2d at 1235 (determining signatory capacity according to state law without considering applicability of federal law).

The application of federal law is also supported by the sound policy of enabling the federal courts to ensure that the FDIC and federal regulators are adequately protected and not subjected to the variegated requirements in each of the different states. The federal courts may find state law useful in expounding upon the contours of the federal defense. But, "in the last analysis its decision turns upon the law of the United States, not that of any state." <u>Santoni</u>, 677 F.2d at 178, quoting <u>D'Oench, Duhme</u>, 315 U.S. at 471 (Jackson, J., concurring). Federal oversight was the policy giving rise to the rule of <u>D'Oench, Duhme</u>; it is equally applicable to resolving the enforceability of the notes themselves.

> <u>2. Fennell and O'Flahaven's signatory capacities are factual questions inappropriate for resolution by summary judgment in this case</u>

"[A] dispute over the meaning of a contract is often a dispute about a material fact." <u>Singh</u>, 977 F.2d at 21. On the other hand, "[i]n some circumstances, 'the words of a contract may be so clear themselves that reasonable people could not

9

differ over their meaning.'" Id.  The court went on to explain:

> The question of whether a contract is ambiguous is one of law for the judge.  A contract is not ambiguous simply because litigants disagree about its proper interpretation.  Rather, a contract, or a set of documents which in the ensemble comprise a contract, is considered ambiguous only when the language "is reasonably prone to different interpretations."  Stated another way, contract language which is susceptible to differing, but nonetheless plausible, constructions . . . is ambiguous."

Singh, 977 F.2d at 22 (citations omitted).

Here, the capacity in which Fennell and O'Flahaven signed the notes is subject to genuine debate; in other words, it is sufficiently ambiguous to have put the FDIC on notice through the bank's records that the asset is not unquestionably enforceable against Fennell and O'Flahaven.  On the one hand, supporting the FDIC, is the fact that O'Flahaven and Fennell signed the promissory note without any clear indication that they were doing so only in a representative capacity.  On the other hand, while Fennell and O'Flahaven were identified as the "maker" of the note, O'Flahaven's address was tied to the business, Teksource, and the note provided that the funds were "to be used to refinance existing notes of each of the Makers, and to provide additional new funds" and that the funds were limited to "business purposes", and not allowed for "personal, family, or household use."  Additionally, the promissory note included a provision indicating that the note would be in default if

10

Teksource defaulted on any of its other loans with Hillsborough.[2] These facts are not, of course, inconsistent with the entrepreneurs guarantying payment by their business venture, but when combined with the fact that the bank's records did not include or require loan applications or personal financial statements from either Fennell or O'Flahaven and relied solely on Teksource's finances,[3] a regulator's likely conclusion was either that the loan was being extended to the business itself or that the bank was extremely reckless in verifying creditworthiness.

Considering the entire package of loan documents -- particularly the lack of a loan application or personal financial statement from either individual -- it is equally plausible that

---

[2] Counterbalancing this, the definition of default was contained in two consecutive paragraphs. The first paragraph referred to the "Makers'" obligation to pay upon the instant note; the second referred to any default in any other loan between Teksource and the bank. Although the FDIC overlooks the point, the use of different terms in the two consecutive paragraphs should not be dismissed as insignificant.

[3] The import of the absence of these documents from the loan package is reinforced by both Fennell's explanation that, when asked, he refused to provide a financial statement explaining that the loan was extended to the corporation only. O'Flahaven, on the other hand, suggests that she was never asked for a personal financial statement. Constituting only extrinsic evidence, these statements of course cannot be the basis for any ruling on the capacity issue. The statements attributed to Hillsborough and Teksource officials are similarly excluded. Unless reduced to a judgment on the merits, evidence of efforts to enforce the loan against Teksource are also extrinsic and, therefore, not relevant in light of D'Oench, Duhme.

O'Flahaven and Fennell took out a loan in their corporate capacities on behalf of Teksource as is the possibility that O'Flahaven and Fennell offered their own personal resources in guaranty of a loan to Teksource. Because the contract is ambiguous as to Fennell's and O'Flahaven's signatory capacity and because this ambiguity gives rise to a question of fact, summary adjudication of the capacity issue is DENIED.

**IV.  The Asserted Fraud Defenses Are Barred by <u>D'Oench, Duhme</u>**

O'Flahaven and Fennell both contend bank officers and other Teksource agents made various misrepresentations that rendered the note void. None of these, however, amount to anything beyond fraud in the inducement -- a defense which has been expressly abrogated by the Supreme Court. <u>Langley</u>, 484 U.S. at 94.

A.   <u>The Alleged Deception Regarding Capacity</u>

The essential test of "fraud in the factum" as described by the Supreme Court is whether the party being charged was "without knowledge of [the document's] true nature or contents." <u>Langley</u>, 484 U.S. at 93. In holding that fraud in the factum would be a valid defense notwithstanding <u>D'Oench, Duhme</u>, the Supreme Court relied in part on the U.C.C. section regarding the rights of a holder in due course. <u>Langley</u>, 484 U.S. at 93, citing U.C.C. § 3-305(2)(c). <u>See</u> <u>also</u> <u>Caporale</u>, 931 F.2d at 2 n.1. Section 3-305(2)(c) permits as a defense against a holder in due course, a

claim of misrepresentation that

> induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms.

U.C.C. § 3-305(2)(c).[4]

That this type of fraud might extend to misrepresentations as to the capacity in which the loan is executed is supported by both the Official Comment and Caporale. The Official Comment notes that "[u]nder this provision the defense extends to an instrument signed with knowledge that it is a negotiable instrument, but without knowledge of its essential terms." U.C.C. § 3-305, Comment 7. Whether one is signing a note in one's personal capacity or solely as the agent of a principal is surely an "essential term." Deception regarding one's responsibility to pay the note is not simply a dispute as to the "underlying terms" of the note, but "the basic nature of the obligation . . . assumed by entering the loan agreement." In re 604 Columbus Ave.

---

[4]  Although, as discussed earlier, the issue presented is a matter of federal law, it is noteworthy that New Hampshire has adopted this statute verbatim. N.H. Rev.Stat.Ann. § 382-A:3-305.
    It is also noteworthy that when the U.C.C. section was recently amended, those amendments were also adopted in New Hampshire -- verbatim. U.C.C. § 3-305(a)(1) (1992), N.H. Laws ch.346, § 1 (1993). The revisions are ultimately irrelevant since the changes are merely cosmetic -- as reinforced by the fact that the relevant portion of the Official Comment remains unchanged. Ultimately, however, which version of the section and comment to apply is not dispositive since this issue remains a question of federal common, not state statutory, law.

13

<u>Realty Trust</u>, 968 F.2d at 1347.  This is borne out by the <u>Caporale</u> panel's unwillingness to summarily dismiss a capacity claim as insufficient as a matter of law under <u>D'Oench, Duhme</u>, but to focus instead on whether the defense was properly raised and evidentially established.  <u>Caporale</u>, 931 F.2d at 3.

As explained by the Official Comment, cited to by <u>Langley</u>:

> The test of the defense . . . is that of excusable ignorance of the contents of the writing signed.  The party must not only have been in ignorance, but must also have had no reasonable opportunity to obtain knowledge.

U.C.C. § 3-305, Comment 7.

The commentary goes on to explain that:

> In determining what is a reasonable opportunity all relevant factors are to be taken into account, including the intelligence, education, business experience, and ability to read or understand English of the signer.  Also relevant is the nature of the representations that were made, whether the signer had good reason to rely on the representations or to have confidence in the person making them, the presence or absence of any third person who might read or explain the instrument to the signer, or any other possibility of obtaining independent information, and the apparent necessity, or lack of it, for acting without delay.  Unless the misrepresentation meets this test, the defense is cut off . . .

U.C.C. § 3-305, Comment 7 (1992).

Virtually all of these factors decisively favor the FDIC.  The most significant allegations are that Fennell and O'Flahaven relied on bank officer's statements that the documents were prepared as corporate loans.  Fennell and O'Flahaven, however, were both capable of reading the documents and concluding that,

14

at best, the representative capacity of the signators was ambiguous. Fennell and O'Flahaven both describe themselves as intelligent, educated individuals with significant business experience -- albeit ones who were duped. Thus, the real claim is not that they did not know what language was used in the contract,[5] but rather that they were deceived as to the legal effect of the language. The circumstances were plainly such that independent legal counsel was available and would reasonably be consulted; this was not an ordinary consumer transaction. Nothing precluded them from seeking independent legal advice. Their failure to read the documents or seek legal counsel should not be allowed to interfere with the rights of the FDIC.

### B. Fennell's Fraud Claims

Fennell claims he was fraudulently induced to invest in Teksource by representations from both Teksource officials and bank officials as to outstanding contracts and receivables. These alleged misrepresentations, however, have nothing to do with the loan itself and are not chargeable against the FDIC.

As to the note at issue, he claims he was sent only the signature page which was represented to be part of a proposed buy-out of Teksource by a number of other companies. Fennell

---

[5] See infra regarding Fennell's and O'Flahaven's claims that they signed blank documents.

15

asserts he was not provided with a complete copy of the promissory note currently being sued upon. This, however, was a error which, as against the FDIC, Fennell must bear the risk of loss. Irrespective of Fennell's good faith or lack of intent to deceive banking authorities, by signing a note which he had not reviewed, he "lent [himself] to a scheme that could mislead bank examiners." Caporale, 931 F.2d at 2. Fennell had the right, power, and ability to demand a copy of the complete note to review before signing it. His failure to do so created the obvious risk that the note was not drafted as he believed it would be. Fennell could have -- and under D'Oench, Duhme should have -- reviewed the entire note before signing it.

Finally, Fennell's claims regarding the guaranty by Deaver Brown are irrelevant to Fennell's own liability. At most, Fennell may have identified an additional party against whom the loan might be collectable. To survive D'Oench, Duhme, the error must be such as to have rendered the original note void. The supposed negligent cancellation of a guaranty does not in any way detract from the validity of the note or Fennell's personal liability if he signed the note in his personal capacity.

C.   O'Flahaven's Fraud Claims

O'Flahaven raises claims similar to Fennell's attempting to explain how she was supposedly cozened into signing the note.

16

Ultimately, however, like Fennell's claims, they are without merit as against the FDIC under D'Oench, Duhme. Like Fennell, O'Flahaven claims she was misled by others as to Teksource's financial viability and, relying on those misrepresentations, agreed to join Teksource. As with Fennell, these are not matters that were part of the loan package and, at best, only tangentially related to the loan itself. As against the FDIC, these facts cannot constitute a defense and are irrelevant.

As with Fennell's analogous argument, O'Flahaven's assertion that she was defrauded because the terms of the note were filled in after she signed it is an invalid defense under D'Oench, Duhme. Caporale, 931 F.2d at 2.

O'Flahaven also suggests that the note was not "facially unencumbered" -- and was therefore exempt from D'Oench, Duhme -- because litigation between O'Flahaven and the bank had been ongoing for approximately 10 months before the FDIC closed the bank and acquired the note. The short answer to this is that Langley flatly rejected the argument that a pending lawsuit raising certain defenses would affect the viability of those defenses under § 1823(e).[6] O'Flahaven has made no attempt to

_____

[6] Langley explained that the harm to the FDIC is not simply in acquiring a note that was subject to an unknown defense. Rather, the harm began when the FDIC was unable to detect the defense from a review of the bank's records at the time the loan
(continued...)

17

distinguish Langley.  Thus, irrespective of the FDIC's knowledge under a D'Oench, Duhme analysis,[7] these claims are barred under § 1823(e). Langley, 484 U.S. at 94-96.

**V.    The Loan Agreement is Supported by Consideration, However, D'Oench, Duhme Does Not Bar the Failure of Consideration Defense That the FDIC has Failed to Rebut**

A.    The Loan Contract is Supported by Consideration

Consideration does not require that each side receive a direct, personal benefit.  It is basic hornbook law that consideration consists simply of any bargained-for benefit to the promisor or detriment to the promisee. 1 E. Allan Farnsworth, Contracts, §§ 2.3, 2.4 (2d ed. 1990), U.C.C. § 3-303(b). See also Chasan v. Village Dist. of Eastman, 128 N.H. 807, 816, 523 A.2d 16, 22 (1986), N.H. Rev.Stat.Ann. § 382-A:3-303(b).  Even under O'Flahaven's interpretation of the loan contract,[8] in exchange

------

[6]  (...continued)
was entered into, thereby impairing the FDIC's ability to perform an accurate solvency determination at an earlier time. Id., 484 U.S. at 95.

[7]  Interpreting D'Oench, Duhme, several of the circuit courts have held that, since the doctrine is a form of equitable estoppel, proof of the FDIC's knowledge throughout the agreement's history would render D'Oench, Duhme inapplicable. E.g. FDIC v. Gulf Life Ins. Co., 737 F.2d 1513, 1518 (11th Cir. 1984).  The First Circuit has not confronted this issue.
    In any event, since the defense is barred by § 1823(e), the applicability of D'Oench, Duhme need not be resolved.

[8]  Fennell initially raised similar arguments, but retreated to the "failure of consideration" argument discussed below.

18

for O'Flahaven's promise to repay the loan (whether in an individual or corporate capacity), Hillsborough Bank incurred the detriment of promising to extend a loan to Teksource.

The alleged defect identified by O'Flahaven is a supposed lack of consideration, not its failure.  These arguments are so patently spurious that the defense is rejected on the merits, irrespective of D'Oench, Duhme or § 1823(e).

B.    The Failure of Consideration Defense

1.    The failure of consideration defense is not barred by D'Oench, Duhme or § 1823(e)

Failure of consideration, unlike lack of consideration, focuses upon the implementation of the contractual promises.  The argument here about failure of consideration is that although Hillsborough promised to disburse the loan proceeds, in fact it never did disburse them and, thus, Fennell's and O'Flahaven's promises to repay the loans never matured.  The FDIC argues that this defense is also barred by D'Oench, Duhme and § 1823(e).

Remembering that the focus of D'Oench, Duhme is on the ability of banking regulators to determine the value of assets and liabilities, it should be clear that a "failure of consideration" defense of the type presented here would not be barred by either D'Oench, Duhme or § 1823(e).  In this case, whether the loan was in fact disbursed should be contained in the records of the bank.  If the loan was disbursed, the failure of

19

consideration defense is without merit.  If the loan was not disbursed, there is no obligation under the loan contract for the FDIC to sue upon.

Since § 1823(e) bars only use of "agreements" to deflect liability for an asset, Carr, 13 F.3d at 429, this failure of consideration argument is not statutorily barred.  Discharge of the loan's obligations to repay based on the absence of any disbursal does not require proof of a separate or secret "side agreement".  Rather, the non-disbursement of the loan proceeds requires proof of nothing more than an historical fact -- one that should be plainly evident in the bank's official records.

In closely analogous situations, the First and Sixth Circuits have explicitly held that proof of discharge through payment is not barred by D'Oench, Duhme or § 1823(e). Bracero & Rivera, 895 F.2d at 826, Commerce Fed., 872 F.2d at 1246.

Although neither Bracero & Rivera nor Commerce Federal proffered much explanation for their rulings, they are fully consistent with both the language and purpose of D'Oench, Duhme and § 1823(e).  Adducing evidence of payment does not give rise to the concerns that prompted D'Oench, Duhme or § 1823(e). Evidence of the face value of the note, as well as a record of any payments received on the note, should be plainly reflected in the bank's records.  Thus, allowing evidence of payment -- or

20

non-disbursal <u>ab</u> <u>initio</u> -- would not adversely affect the FDIC's ability to evaluate the solvency of financial institutions.

Further, to read <u>D'Oench, Duhme</u> as precluding proof that the loan was in fact paid or that funds were never in fact disbursed would unjustly enrich the FDIC and the failed bank's assets. Indeed, the FDIC makes no attempt to explain how its interpretation of <u>D'Oench, Duhme</u> would not preclude the FDIC from seeking to enforce a note perennially, each time asserting that <u>D'Oench, Duhme</u> precluded evidence of all prior payments. <u>D'Oench, Duhme</u> was intended to protect the FDIC and allow it to collect debts owed to failed lending institutions. If the loan was in fact paid or the funds never disbursed, no debt remains owing to the failed bank and thus, there is nothing for the FDIC to collect. This defense is not barred by either <u>D'Oench, Duhme</u> or § 1823(e).

     2.   <u>The FDIC has failed to rebut the allegations that the loan was never disbursed</u>

As noted above, the FDIC presented no affirmative evidence establishing its right to summary judgment. In the body of its memorandum of law, the FDIC declares its intention to rely upon allegations contained in an affidavit that was not filed with this Court. As a result, there is no direct evidence that the loan proceeds were ever disbursed. Furthermore, Fennell has

21

directly charged[9] that the loan proceeds were never disbursed and that the FDIC has failed to produce in discovery any documentation to prove that the loan was in fact disbursed. The FDIC did not file a reply or submit any additional evidence.

Although proof of disbursement is not necessary in every loan sued upon, where the issue is raised, the burden should be placed squarely on the plaintiff to prove that it is seeking repayment for funds disbursed, not collection on a promise whose conditions have never matured. If the loan was disbursed, the FDIC should be able to adduce concrete evidence of this fact. If the loan was not disbursed, the best the prospective borrowers could do would simply be to assert that fact. Here, they have done so. The FDIC has not conclusively rebutted this fact. Summary adjudication of this defense will be denied.

## VI. Conclusion

All the proposed fraud defenses are based on representations not contained in the bank's records and, therefore, insufficient as a matter of law under D'Oench, Duhme and 12 U.S.C. § 1823(e). Irrespective of whether lack of consideration is a viable defense

---

[9] These allegations are raised only in the points and authorities since, following the FDIC's lead, Fennell also relies on an affidavit filed in state court and not submitted here -- although Fennell took the extra step to "verify" the memorandum.

Since Fennell will not bear the burden of proof on this issue, however, his unsworn allegation is sufficient. Celotex, 477 U.S. at 322.

22

against the FDIC, consideration is manifestly present and this defense, too, is therefore insufficient as a matter of law. Summary adjudication of these claims is therefore GRANTED.

Neither D'Oench, Duhme nor 12 U.S.C. § 1823(e) preclude a defense of failure of consideration based on the bank's alleged failure to disburse the loan. In the face of defendants' assertion that the loan was not disbursed, the FDIC -- which will have the burden of proof on this issue at trial -- has failed to establish its right to judgment by failing to provide conclusive evidence that the loan was in fact disbursed. Therefore, summary adjudication of the failure of consideration defense is DENIED.

D'Oench, Duhme and 12 U.S.C. § 1823(e) bar the Court from considering extrinsic evidence in support of defendants' claims that they signed the notes solely in their capacities as officers of the borrowing corporation. Nonetheless, ambiguities in the loan papers themselves present a genuine issue of material fact as to whether Fennell and O'Flahaven could be held personally liable. Summary adjudication of the capacity claims is DENIED.

SO ORDERED.

_____
ROBERT J. KELLEHER
United States District Judge

DATED: April 8, 1994

cc: John C. La Liberte
Thomas H. Richards

23

Janine Gawryl
Kathleen E. O'Flahaven
Percy L. Fennell