El Juez Asociado Señor Córdova Dávila no intervino.

EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ CAPRE, acusado y apelante.

No. 4570.—*Sometido:* Abril 22, 1932. *Resuelto:* Noviembre 25, 1932.

*Juan Valldejuli,* abogado del apelante; *E. Díaz Viera, Fiscal Auxiliar,* abogado de *El Pueblo,* apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

José Capre fué acusado como autor de un delito de perjurio y condenado a sufrir dos años de presidio con trabajos forzados. No conforme, apeló, señalando en su alegato la comisión de cinco errores.

Por el primero sostiene que debió haberse declarado con lugar la excepción perentoria que formulara contra la acusación, por cinco motivos, a saber: porque no aparece de ella que el acusado prestara juramento ante P. del Manzano, subsecretario, porque los subsecretarios de las cortes de distrito no tienen facultad para tomar juramentos y si la tienen es personal, porque el subsecretario del Manzano no es abogado como el secretario de la corte, porque no se consignan en el juramento todos los requisitos que exige la ley y porque no se alega que el juramento fué tomado en un procedimiento sometido ya a la jurisdicción de la corte.

A nuestro juicio ninguno de los motivos especificados justifica el error que se señala. Lo que en la acusación se afirma que el acusado "voluntaria y maliciosamente y de una manera corrupta, habiendo prestado juramento de decir la verdad, toda la verdad y nada más que la verdad ante el Subsecretario de la Corte de Distrito de San Juan, Pedro del Manzano, funcionario debidamente nombrado y en posesión de su cargo, con facultades para tomar juramentos, juró como hecho cierto, que afirmó constarle de propio conocimiento y en un procedimiento sobre declaratoria de herederos, por muerte de Luis López Laboy", fué lo siguiente, que se transcribe íntegro en la acusación:

"DECLARACIÓN JURADA:—Yo, José Capre y Cajigas, bajo juramento declaro:—Que soy mayor de edad, industrial y vecino de San Juan en la actualidad, siendo mi nombre como queda dicho.—Que

conocí a doña Ildefonsa López, por haber vivido el suscribiente en Mayagüez, P. R., durante muchos años, donde residía dicha señora. —Que me consta de propio conocimiento, que dicha señora falleció en Mayagüez, su último domicilio, allá para el mes de agosto de 1898, en el barrio del Río de dicha Municipalidad.—Que el suscribiente estuvo en el entierro de dicha señora, la que fué enterrada en el cementerio de dicha población, que queda a la salida de Mayagüez para San German.—(firmado)—José Capre.—Jurada y suscrita ante mí, hoy a 9 de febrero de 1929, en San Juan, Puerto Rico.—(firmado) L. Vergne Ortiz.—Secretario, Corte Distrito.—Por P. del Manzano, Sub-secretario.''

Transcrita la declaración, continúa la acusación así: ''siendo falso que Ildefonsa López hubiera fallecido y conociendo el acusado su falsedad, cuya declaración así jurada entregó el acusado al subsecretario, y éste recibió en el curso de sus deberes oficiales, con la intención allí y entonces de que surtiera sus efectos en el procedimiento sobre declaratoria de herederos por muerte de Luis López Laboy, incoado por Hilaria López, ante la Corte de Distrito de San Juan; y tal hecho era esencial para que la corte pudiera resolver, como en efecto resolvió, tomando en cuenta dicha declaración jurada, la declaratoria de herederos incoada por Hilaria López, por muerte de Luis López Laboy. Este hecho es contrario a la ley para tal caso prevista y a la paz y dignidad de El Pueblo de Puerto Rico.''

El artículo 89 del Código de Enjuiciamiento Criminal, prescribe:

''Artículo 89. En una acusación por perjurio o por soborno para cometer el perjurio, bastará exponer la esencia del pleito o asunto con referencia al cual se cometió el delito y en qué tribunal y ante quién fué prestado el juramento que se denuncia como falso, y que el Tribunal, o la persona ante quien el juramento fué prestado, tenía facultad para tomarlo, con alegaciones convenientes acerca de la falsedad del asunto en que el perjurio está indicado; pero la acusación no necesita expresar las alegaciones, antecedentes o procedimientos relacionados con el juramento, ni precisar la autorización o poder del tribunal o persona ante quien se cometió el perjurio.''

Y una simple comparación de ese precepto legal con la

acusación permite concluir que la acusación contiene todo lo que la ley exige.

■ Pero yendo al estudio específico de los motivos alegados, encontramos que consta de la acusación que el juramento se prestó personalmente ante el subsecretario de la corte. El hecho de que se consignara el nombre del secretario se debe a la práctica seguida en tales casos, pero no quiere decir que el subsecretario dejara de actuar personalmente.

■ En cuanto a la facultad de los subsecretarios de las cortes de distrito para tomar juramentos, bastará citar lo resuelto por esta corte en el caso de *El Pueblo* v. *Colón,* 17 D.P.R. 1011, 1013, así: "Los subsecretarios que sean nombrados por sus superiores están también autorizados para tomar juramentos. (Ley de marzo 8, 1904, sec. 2ª., p. 141; Ley de marzo 10, 1904, sec. 2ª., p. 108, y Ley de marzo 9, 1910, sec. 1ª., p. 78).", y en este caso concreto el Subsecretario de la Corte de Distrito de San Juan es nombrado por el secretario de la misma, de acuerdo con lo dispuesto en la sección 5 de la Ley No. 105 de 1925, Leyes de 1925, p. 969.

■ La ley no exige que el subsecretario sea abogado. Exige que lo sea el secretario, careciendo de fuerza decisiva el argumento de que porque el secretario deba ser abogado necesariamente tenga que serlo el subsecretario.

■ La circunstancia de no haberse consignado por el subsecretario que el que juró la declaración fuera Capre no vicia de nulidad el juramento. Se desprende del propio documento que fué Capre el que juró y se consigna expresamente en la acusación que lo fué, siendo el hecho susceptible de probarse por prueba *aliunde* en el juicio.

■ Por último, surge de la declaración jurada y se alega expresamente en la acusación que la declaración se juró para usarse como se usó en una declaratoria de herederos que es un procedimiento autorizado por la ley.

■ El segundo error señalado, se formula así:

"Haber declarado sin lugar la recusación general al panel del cual se constituyó el Jurado que juzgó al acusado."

Todo lo que consta en el récord sobre el error es lo que sigue:

"Defensa.—Antes de hacer ninguna investigación en cuento a las recusaciones motivadas vamos a consignar una recusación general al panel en este caso, porque la Corte de Distrito de San Juan, sin autoridad de ley, procedió al nombramiento de un nuevo comisionado y una nueva selección de cierto número de jurados para completar la lista de 300, bajo la teoría de que organizada la Corte de Distrito de Bayamón los señores del jurado que pertenecen a aquel distrito no pueden continuar siendo jurados ni formar parte de la lista general de los 300 jurados para servir en el término de esta Corte, y los mismos fueron seleccionados el primero de abril de 1930; entendiendo nosotros que con esta selección se ha violado la ley, porque habiéndose creado un distrito nuevo la ley requiere que para poder actuar como jurados sean residentes del distrito donde fueron seleccionados; y porque el nombramiento de un nuevo comisionado no estaba justificado.

"Fiscal.—Esa cuestión fué resuelta por la Corte.

"Juez.—La Corte declara sin lugar la moción.

"Def.—Tomamos excepción."

El fiscal sostiene que no hay base en los autos para resolver la cuestión planteada, porque no consta de ellos que el nombramiento del nuevo comisionado y la selección de los nuevos jurados realmente se hicieran, y nos inclinamos a creer que tiene razón.

Pero tomando como cierto todo lo dicho por el acusado, no estamos convencidos de que el procedimiento adoptado por la Corte de Distrito de San Juan ante la emergencia que se le presentó a virtud de la creación de la Corte de Distrito de Bayamón fuera erróneo. Al contrario, parece lógico. Tampoco resulta perjuicio para el acusado. El tenía derecho a que los doce jurados que habían de juzgarlo se extrajeran de los trescientos jurados de su distrito y de hecho así se hizo. Si hubieran continuado en la lista los jurados residentes en los pueblos correspondientes al nuevo distrito judicial de Bayamón, entonces hubiera podido alegar que había sido juzgado por jurados que no formaban parte de su distrito—San Juan—en el momento de celebrarse el juicio.

Bajo cualquier aspecto que se considere la cuestión suscitada, hay que concluir que no puede servir de base para la revocación de la sentencia recurrida.

En el tercer error se agrupan las excepciones tomadas por el acusado con motivo de la práctica de la prueba.

El acusado se opuso a que el fiscal hiciera al testigo del Manzano, subsecretario de la corte de distrito, las siguientes preguntas: *a.*—después de haber declarado que conocía al acusado: ''¿Usted recuerda si en alguna ocasión estuvo él ante usted?''; *b.*—mostrándole la declaración jurada por Capre: ''¿Ante quién está prestada esa declaración jurada?''; *c.*—y poco después: ''Ahora voy a preguntar al testigo ¿quién fué la persona que firmó ese documento?'' *d.*—y luego ''¿Esa firma fué prestada ante usted?''. La corte permitió las preguntas. La primera no consta que fuera contestada, la segunda fué contestada así: ''Esta declaración está jurada ante mí'', la tercera como sigue: ''La firmó José Capre'', y la cuarta no consta que fuera contestada.

A nuestro juicio ningún error fué cometido. El documento no fué alterado en modo alguno. Se suplió lo que no se hizo constar expresamente en el *jurat* pero se desprende del documento mismo, y ello es admisible. Véase la jurisprudencia sobre el particular tal como se resume en 1 Ruling Case Law 769:

''El *jurat* es simplemente un certificado que evidencia el hecho de que la declaración jurada fué propiamente otorgada ante funcionario debidamente autorizado para ello. Aunque se ha dicho que hablando estrictamente no forma parte de la declaración jurada sino que es simplemente prueba de que ésta ha sido jurada debidamente por el declarante, la prudencia ordinaria ordena que un *jurat* debidamente otorgado acompañe toda declaración jurada. Sin embargo, en ausencia de un estatuto que prescriba lo contrario, su omisión no es fatal a la validez de una declaración jurada siempre que del resto del documento o de prueba *aliunde* se desprenda que el escrito fué en verdad jurado ante un funcionario autorizado.''

El fiscal introdujo como prueba el expediente sobre declaratoria de herederos, la defensa se opuso y la corte lo

admitió. No se cometió error alguno porque el fiscal especificó que presentaba del expediente en evidencia la solicitud de insolvencia, la declaratoria de herederos, la declaración jurada de Capre y la resolución del juez todo dentro del expediente para demostrar además la existencia del mismo.

El fiscal estaba obligado a demostrar que se había prestado una declaración jurada en un procedimiento judicial sobre un hecho esencial en el mismo. Y el medio escogido para ello, demostrado además que la declaración jurada esencial fué tomada en consideración como uno de los fundamentos decisivos de la resolución judicial del asunto, fué legal.

También se opuso la defensa a la admisión de la declaración jurada de Capre porque no tenía individualmente el sello de radicación. No tiene razón. Para tramitar la declaratoria de herederos se solicitó el beneficio de pobreza. Petición de pobreza y petición de herederos se presentaron conjuntamente, sin que pudiera radicarse la segunda sin pago de derechos hasta que se resolviera favorablemente la primera. El juez resolvió favorablemente la primera y al radicarse la segunda bastó consignar la radicación en el escrito inicial sin repetirla en cada uno de los documentos que lo acompañaban. Esa es la práctica que se sigue y que está de acuerdo con la Ley No. 17 de 1915 regulando el cobro de derechos y costas en causas civiles en las cortes de distrito y municipales de la Isla.

Varias objeciones se levantaron con motivo de la declaración del perito calígrafo O. M. Wood. La defensa presentó como perito calígrafo a P. C. Timothée quien comparando la firma de Capre que aparece en el juramento con otra que la defensa aceptó como indubitada aseguró que no eran puestas por la misma mano. Entonces, en refutación, el fiscal presentó al perito Wood. La defensa impugnó su competencia, sus manifestaciones sobre el aparato usado por el perito de la defensa y la declaración en sí misma.

Hemos estudiado cuidadosamente todas las cuestiones levantadas y no creemos que se cometiera error alguno. Del

hecho de que el perito no obstante la experiencia que dijo tener durante muchos años sólo hubiera declarado ante los tribunales como tal muy pocas veces, no puede concluirse que fuera incompetente. Alguna tiene que ser la primera vez que un perito sea admitido a declarar. Son los conocimientos en sí mismos los que deben tomarse en consideración y el perito demostró por la propia declaración que prestara que los tenía y hondos en verdad.

La circunstancia de que el perito calificara de anticuado el instrumento que usó el perito de la defensa, no vicia de nulidad su declaración. Dió las razones que tenía para ello.

Y en cuanto a que el perito al declarar se saliera de los límites de su misión para convertirse en juzgador como cuando dijo: ''La palabra 'Capre' está escrita con una inclinación ascendente, porque cuando el hombre que la escribió llegó a esa parte de su nombre él trató de escribir algo que estaba fingiendo. . .'', cometiéndose un grave error al permitir que su testimonio quedara en el récord, no estamos conformes.

El perito explicó el trabajo por él realizado y estableció luego sus conclusiones. Ellas no constituían un fallo condenatorio. El mismo razonamiento de la defensa podría aplicarse a la declaración del perito del acusado, diciéndose que constituía un fallo absolutorio.

La prueba pericial, que dicho sea de paso, es una de las que debe examinarse con mayor cautela, está sujeta a ser creída o no por el juez o el jurado.

Al jurado se sometieron ambas declaraciones. Su veredicto fué congruente con la conclusión del perito del fiscal, pero el veredicto no se rindió a virtud de esa conclusión. Quizá influyó, quizá se prescindió por completo de ella. La prueba básica estaba en el documento mismo, en la declaración del subsecretario y en la otra evidencia testifical y documental aportada.

El cuarto error señalado sostiene que la pena es excesiva y el quinto y último que el veredicto es contrario a

la evidencia. Examinaremos primero el quinto y luego el cuarto.

La prueba fué contradictoria. Declaró el acusado que la firma que aparece al pie de la declaración de que se trata no es suya y que jamás compareció ante el subsecretario; que lo único que hizo fué acompañar a su comadre Amalia Lloreda a la oficina del Lcdo. Juan Pabón donde ocurrió lo que sigue:

"Después de la declaración que yo dí que conocía mi comadre dice: 'Firme aquí'. Me dejó un espacio en blanco y dijo: 'tiene que firmar aquí' y yo le dije: 'Bueno como estoy con prisa le firmo', y firmé abajo donde me pertenecía firmar. En lo último no quiso que firmara."

Frente al testimonio del acusado está el documento con su firma y la declaración jurada del subsecretario que aseguró que firmó ante él personalmente y está además el hecho claramente demostrado de haberse obtenido la declaración de herederos de una persona que estaba aún viva en Mayagüez para poder la peticionaria heredar a su vez a un soldado que murió en Arizona, siendo la declaración jurada del acusado esencial en dicho procedimiento.

El jurado resolvió el conflicto en contra del acusado, y nada hay en los autos que demuestre que actuara movido por pasión, prejuicio o parcialidad. Ningún error manifiesto surge.

La pena impuesta por la corte fué la de dos años de presidio con trabajos forzados. No parece excesiva en modo alguno. No llega ni siquiera al medio de la pena fijada por el legislador para el delito, uno a diez años. La circunstancia de que el acusado tiene 57 años de edad y nunca había sido condenado, no es motivo para rebajar la pena impuesta. Su misma edad debió mostrarle la gravedad que entraña el hecho de comparecer ante un funcionario judicial y declarar falsamente que una persona que vive ha muerto a fin de que otra pueda percibir una herencia que no le corresponde. Si de algo peca la pena no es de excesiva.

122

*Debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*