ÁNGEL RODRÍGUEZ VIDAL, apelante y peticionario, *v.* BENVENUTTI & RIVERA, RENÉ BENVENUTTI y ÁNGEL NIGAGLIONI, apelados y recurridos.

*Número:* O-84-238 *Resuelto:* 29 de junio de 1984

584

*Julio E. Gil de Lamadrid Pérez,* abogado del peticionario; *Domingo A. Vivaldi Fermoso,* de *Díaz García & Ralat,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

[E]l deber de ciencia como conocimiento del derecho es, además, un imprescindible contacto con la materia viva. Dice Ceferino Merbilháa que "el juicio del juez no debe ser un fruto racional sino sensorial. La injusticia tiene que doler. Precisamente se revela por la irritación que produce. Si el oído ha sido bien cultivado, percibe las desafinaciones de una ley mal aplicada. El razonamiento viene a posteriori, a iluminar y clasificar el fenómeno producido en su conciencia de un modo casi misterioso. Si desandáramos su pensamiento, en el embrión leeríamos: 'Yo sé que esto es así, más aún no sé por qué'. Se produce de este modo un movimiento de devanadera. Por el repetido y laborioso trabajo de la memoria y de la razón, el estudiante encauza, orienta y aguza la facultad intuitiva. Luego, desde lo alto de los principios intuídos, desciende en

busca de las razones que lo sustenten". (Escolio omitido.) A. Alvarado Velloso, *El juez—sus deberes y facultades; los derechos procesales del abogado frente al juez*, Buenos Aires, Ed. Depalma, 1982, pág. 25.

## I

Ángel Rodríguez Vidal trabajó por 30 años para la fábrica de muebles Benvenutti & Rivera, Inc. Como resultado, al 8 de agosto de 1981, dicha entidad corporativa reconocía adeudarle $7,000 en concepto de comisiones.

Así las cosas, el 10 de septiembre de 1981 René Benvenutti y Ángel Nigaglioni suscribieron el siguiente documento:

----------------PAGARÉ A LA ORDEN----------------

CANTIDAD: $7,000.00
INTERESES: 10%
VENCIMIENTO: A LA PRESENTACIÓN

*Debemos y Pagaremos solidariamente a la orden de Ángel Rodríguez Vidal, mayor de edad, viudo, vendedor y cobrador retirado de la Fábrica Benvenutti Rivera, Inc. y vecino de Yauco, Puerto Rico la suma de siete mil dólares ($7,000.00) por concepto de comisiones en ventas y cobros.*

La antedicha obligación devengará intereses a razón del 10% anual y se pagará a su presentación a la orden al tenedor por endoso.

En la eventualidad de una reclamación judicial *será de nuestra cuenta* los gastos, costas y honorarios de abogado para todo lo cual se fija la cantidad de setecientos dólares ($700.00).

*Nos sometemos* voluntariamente a la jurisdicción del Tribunal General de Justicia de Puerto Rico en caso de reclamación judicial y *renunciamos* expresamente a la *presentación, protesto o aviso de no haberse honrado este pagaré y así mismo renunciamos* a las leyes de prescripción que puedan favorecernos.

En testimonio de lo cual *libramos* el presente pagaré en la ciudad de Yauco, Puerto Rico, Hoy día 10 de septiembre de 1981.

[*FDO.*] ÁNGEL NIGAGLIONI
[*FDO.*] RENÉ BENVENUTTI
Aff. Núm. 3584

Suscrito y *reconocido* ante mí por René Benvenutti y Ángel Nigaglioni, mayores de edad, casados, industriales, *en su carácter de Presidente y Tesorero de la Fábrica de Muebles Benvenutti & Rivera Inc.* y vecinos de Yauco, Puerto Rico, a quienes doy fe de conocer personalmente.

En Yauco, Puerto Rico a 10 de Sept. de 1981.

[SELLO NOTARIAL] [*FDO.*] JUAN BÁEZ TORRES
 NOTARIO PÚBLICO

(Énfasis nuestro.) *Exhibit* I.

Hasta el presente nadie ha satisfecho a Rodríguez Vidal la deuda ni le ha honrado el pagaré. Acudió a la vía judicial. Los tribunales de Distrito y Superior fallaron en su contra. Concluyeron que la obligación era exclusivamente de la corporación. Mediante orden de mostrar causa resolvemos.

## II

El primer párrafo del cuerpo del pagaré no ofrece dudas: *"Debemos y Pagaremos solidariamente* a la orden de Ángel Rodríguez Vidal, mayor de edad, viudo, vendedor y cobrador retirado de la Fábrica Benvenutti Rivera, Inc. y vecino de Yauco, Puerto Rico la suma de siete mil dólares ($7,000.00) por concepto de comisiones en ventas y cobros." (Énfasis nuestro.) Más adelante, expresan: "En la eventualidad de una reclamación judicial será de nuestra cuenta . . . . Nos sometemos voluntariamente a la jurisdicción del tribunal . . . ." De ese texto aflora incuestionablemente una pluralidad y solidaridad que fuertemente apunta hacia una responsabilidad personal. No se hizo ni hay mención alguna que cualifique la obligación. Simplemente la asumieron y renunciaron a las defensas clásicas.

No obstante, el notario Báez Torres, en la fórmula de reconocimiento de las firmas (no fue un juramento), indicó que había sido suscrito por dichas personas "en su carácter de Presidente y Tesorero de la Fábrica de Muebles Benvenutti y Rivera, Inc.". En virtud de esta aseveración, los foros de instancia determinaron que el pagaré representaba solamente una obligación corporativa. Erraron.

■ La palabra *afidávit* es una expresión latina, y más propiamente *affidavit,* que se deriva de *affido,* la cual significa *doy fe. . . .* Un affidavit *es una declaración formal de autenticidad.* Debe *distinguirse* de una declaración jurada, porque no todos los affidavit contienen declaraciones juradas ni todas las declaraciones juradas aparecen en forma de affidavit. Ahora bien, un affidavit *puede incluir* una declaración jurada; pero puede haber una declaración de autenticidad de firmas sin que necesariamente haya un juramento, e incluso *sin que lo pueda haber,* como en el caso de los contratos. P. Malavet Vega, *Notas sobre el Derecho notarial puertorriqueño,* Esc. Der. Univ. Católica P.R., 1968, pág. 243.

■ La Sec. 1 de la Ley de 12 de marzo de 1908 define "afidávit o declaración de autenticidad el acto y el documento, mediante los cuales, un notario u otro de los funcionarios designados [en la ley] certifica o da fe de la verdad o reconocimiento de una firma, de un juramento, o de otro hecho o contrato que afectare a propiedad mueble o inmueble, no formalizados en escritura pública". 4 L.P.R.A. sec. 887.

■ A base de la amplitud de esta disposición legal, "[s]e suele denominar affidavit tanto al *acto* por el cual se declara la autenticidad como al *documento* que contiene dicha declaración. Ahora bien, podemos decir que affidavit es *el género,* dentro del cual concepto se incluyen las *especies* o modalidades de declaraciones de autenticidad que pueden referirse a 1) autenticidad de una firma; 2) autenticidad de un juramento; y 3) autenticidad de otro hecho, acto o contrato". Malavet Vega, *op. cit.,* pág. 244.

■ En resumen, un afidávit es un documento auténtico, que hace fe pública. *Bldg. Maintenance Serv.* v. *H. R. Exec. Bldg.,* 109 D.P.R. 656, 667 (1980). Probatoriamente goza de autenticación prima facie. Regla 79 de Evidencia.

■ La certificación del notario de la autenticidad de la firma puede ser de juramento o de simple reconocimiento. E. Menéndez, *Lecciones de Derecho Notarial,* New Hamp-

shire, Ed. Equity, 1967, pág. 64. Bajo cualesquiera de esas alternativas siempre adopta un plano documental, esto es, se reduce a escrito. Su importancia radica en que presupone una correspondencia real y legítima entre el compareciente y la firma, a base del principio medular de la fe de conocimiento. *In re Olmo Olmo*, 113 D.P.R. 441 (1982). Dicho de otro modo, "ese hecho implica el testimonio notarial de que el firmante estuvo ante él y de que, en este acto, puso su firma en el documento, y, además, lleva implícito, aunque no se exprese en la redacción del testimonio, el conocimiento o la identificación del firmante por la documentación presentada o por otro medio". D. L. Lanfranchi, *Formación del Acto Notarial*, 103 Rev. Der. Not. 297, 364 (1979).

 Ahora bien, esa declaración de autenticidad no determina ni forma parte de la sustancia del documento principal, en este caso el contenido del pagaré. Simplemente constituye un certificado o fórmula que acredita que el documento se suscribió ante un funcionario (notario) autorizado. *Pueblo* v. *Capre*, 44 D.P.R. 112, 118 (1932). Como tal, la fórmula en particular seguida es producto del notario, aunque con arreglo a la ley.(1) El lenguaje del documento (pagaré) es lo decisivo. En este caso, claramente indica que se suscribió solidariamente. El carácter —representativo o

---

(1) La Sec. 3 reza, en lo pertinente:

"El afidávit o declaración de autenticidad, se ajustará a las siguientes fórmulas:

"En el caso de tratarse de un reconocimiento de firma, con juramento: 'Suscrito y jurado, ante mí, por. . . . . . (nombre, mayoridad, profesión y vecindad), a quien conozco personalmente (o de cuyo conocimiento me he asegurado por el dicho de los dos testigos que también suscriben, y a quienes conozco), hoy, en . . . . . (data y fecha).'

"En el caso de tratarse de un reconocimiento de firma sin juramento, la fórmula será idéntica, suprimiéndose las palabras 'y jurado'.

"En cualquier otro caso, se empleará una fórmula breve y sencilla, que comprenda la autenticidad del acto, expresando siempre el funcionario autorizante que conoce personalmente al interesado, o a los testigos de conocimiento." 4 L.P.R.A. sec. 889.

no— como oficiales corporativos nada quita ni añade a la obligación primaria. "En el affidavit, el Notario certifica, expresa que considera auténtica, la *firma* de una persona. Esto supone un conocimiento directo, personal, indubitado, de la persona que suscribe." (Énfasis nuestro.) Malavet Vega, *op. cit.*, pág. 245. Aunque el notario puede examinar el contenido de este documento, no califica ni certifica sobre la validez del mismo. Este profesional del Derecho no interviene en la formación del negocio jurídico ni da fe pública de la expresión del consentimiento. *Ponce Real Estate Corp.* v. *Registrador*, 87 D.P.R. 215, 226 (1963).

▪ Por vía de analogía, en la praxis notarial la doctrina científica reconoce que las "personas que intervienen en el instrumento público son los sujetos del mismo; se les llama *comparecientes*, porque *se presentan ante* el Notario, en una actuación voluntaria por parte de ellos. El que comparece es el agente que provoca la intervención notarial y la actuación de la fe pública. *Comparecencia* —decía GONZALO DE LAS CASAS— es 'la presentación personal de algún sujeto ante cualquier juez o notario'". (Escolio omitido.) E. Giménez-Arnau, *Derecho Notarial*, Pamplona, Eds. Univ. Navarra, 1976, pág. 521.

La división teórica entre las clases básicas de comparecencias distingue entre aquellas personas que actúan en nombre propio o ajeno. Se admite que el propio notario está excluido del concepto "compareciente". Ello no precisa explicación. Esa cualidad más bien forma parte del ámbito del juicio de capacidad que recae apreciar el notario.

Sobre este extremo, como regla general, "[n]inguna declaración especial se precisa cuando el compareciente actúa en nombre propio, si no se hace constar que lo hace con ese carácter". Giménez-Arnau, *op. cit.*, pág. 524. Sin embargo, cuando la comparecencia se hace en representación ajena, es menester consignar el nombre y la cualidad del representante (personal, individual o social), el carácter (legal o

voluntario) de la representación y la prueba que así lo acredita.

## III

En el caso de autos se estipuló que los demandados Benvenutti y Nigaglioni *no* estaban autorizados por resolución corporativa para otorgarlo. ¿Cómo entonces justificar que en pagaré fue suscrito a nombre del ente corporativo? ¿Si con anterioridad la corporación reconocía que adeudaba ese dinero, qué razón existió para que ellos lo ratificaran en pagaré solidario? Adviértase que no se desfiló prueba oral para sostener una explicación racional favorable a la tesis de los deudores. Nada les ayuda el argumento basado en que la corporación estaba insolvente, se acogió a un procedimiento de quiebra, y el demandante recurrente Rodríguez Vidal formuló una reclamación (*proof of claim*). Esa gestión no era incompatible con el carácter personal y solidario dimanante del pagaré. *J.R.T* v. *Marex Const. Co., Inc.*, 103 D.P.R. 135, 143 (1974). Finalmente se caracteriza como increíble pensar que "cuando la condición de la corporación era precaria, a tal efecto, que luego se fue a quiebra, y que siendo ésto de su conocimiento, fueran ellos [Benvenutti y Rivera] a garantizar personalmente una deuda de la corporación". El argumento es de doble pespunte. Precisamente, si la corporación estaba económicamente tan frágil, ¿cómo entonces justificar y explicar que para el acreedor el pagaré fuera suscrito como una obligación corporativa?

Resolvemos que en situaciones de pagarés u otro tipo de obligaciones, en que sólo se pretende vincular a una corporación, tal limitación debe surgir y consignarse expresamente en el texto documental principal y no en la fórmula notarial autenticadora. La intención y sustancia del documento no puede dejarse en manos del notario. Lo contrario tiende a debilitar la visión judicial moderna de excelencia del notariado. *Chévere* v. *Cátala*, 115 D.P.R. 432 (1984). Se presta además a crear confusión, perpetuar engaños y

fomentar litigios innecesarios. "Nuestras leyes no han querido dar un valor tan mediocre al instrumento público: no han pretendido hacer del documento notarial un instrumento de eficacia incompleta o deficiente, sino un medio perfecto —en lo posible— para defender los derechos o negocios que la actuación notarial crea o contribuye crear, consagrando como ciertos los hechos y declaraciones que son fundamento de aquéllos." Giménez-Arnau, *op. cit.*, pág. 527.

*Se expedirá el auto y dictará sentencia para revocar la del Tribunal Superior, Sala de Ponce, fechada 28 de febrero de 1984. Se declarará con lugar la demanda contra René Benvenutti y Ángel Nigaglioni.*

El Juez Asociado Señor Rebollo López disintió sin opinión. El Juez Asociado Señor Irizarry Yunqué no intervino.