*In re* IVÁN A. RAMOS VÉLEZ.

*Número:* TS-2651      *Resuelto:* 1ro de junio de 2000

*Carlos Lugo Fiol, Procurador General,* e *Yvonne Casanova Pelosi, Procuradora General Auxiliar,* querellantes; *Iván A. Ramos Vélez, pro se.*

PER CURIAM:

# I

La Oficina de Inspección de Notarías nos rindió un informe expositivo de que la inspección del Protocolo del notario Iván A. Ramos Vélez correspondiente a 1989 reflejó deficiencias en las Escrituras de Testamento Núm. 2, 3, 16 y 18.

En efecto, en la Escritura Núm. 2 el notario Ramos Vélez omitió dar fe de conocer al testador, y de su capacidad legal y mental. En ésta, el testador falleció y su herencia fue repartida sin que hubiera planteamiento o ningún inconveniente.

La deficiencia de la Escritura Núm. 3 consistió en que omitió dar fe de conocer al testador. La situación fue atendida por el notario Ramos Vélez, satisfaciéndole al testador los gastos de viaje desde el estado de la Florida para que viniera a Puerto Rico y otorgara aquí un segundo testamento.

Las Escrituras Núms. 16 y 18 fueron otorgadas por la misma testadora. En ambas, ésta desheredó a su hija, dejando todos sus bienes a su sobrino. Son idénticas, excepto que la primera no fue presentada en tiempo al Registro de Poderes y Testamentos según ordena la ley. La posterior Escritura Núm. 18 fue un fallido intento de subsanar esa falla. Sin embargo, según indicado, ambas escrituras adolecen de un mismo error, a saber, que omiten dar fe en cuanto al conocimiento de la testadora por el notario autorizante. Preciso es puntualizar que la Escritura Núm. 18 fue impugnada por razón de esa omisión, y el Tribunal de Primera Instancia anuló el testamento.

Previo trámites de rigor, compareció Ramos Vélez. Admite su conducta negligente. Reconoce que la omisión de dar fe del conocimiento del testador en las escrituras de referencia constituyó un error de su parte, aunque lo cataloga de involuntario, producto de su ingenuidad, sin mali-

cia, dolo, fraude, mala fe o motivación de índole alguna. Argumenta que tales omisiones respondieron a que, de alguna manera inexplicable, se borró la "dación de fe" de la computadora. Postula que errar es humano, y expresa legítimo arrepentimiento y nos solicita indulgencia, comprensión y benevolencia.

## II

El Art. 634 del Código Civil, 31 L.P.R.A. sec. 2150, impone al notario autorizante la obligación de conocer al testador y de asegurarse que tenga capacidad legal para testar. El Art. 15(e) de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2033(e), complementa ese mandato al preceptuar que en la escritura pública se consigne expresamente la fe del notario de que conoce a los otorgantes, personalmente o mediante los mecanismos que provee la ley. Además, que a su juicio, ellos poseen la capacidad legal necesaria para otorgar dicha escritura. Es pertinente señalar que el Art. 636 del Código Civil, 31 L.P.R.A. sec. 2152, dispone que será nulo todo testamento en que no se observen esas formalidades de ley.

Reiteramos, pues, la doctrina de que el testamento es un acto eminentemente solemne, que requiere se cumplan las formalidades correspondientes a cada tipo de testamento, so pena de nulidad. Estas formalidades no son simples cuestiones de evidencia, sino requisitos sustantivos, de los cuales depende su validez. *Rivera Pitre v. Galarza Martínez*, 108 D.P.R. 565, 568 (1979); *In re Méndez Rivera*, 141 D.P.R. 753 (1996).

La omisión del notario de dar fe del conocimiento de los testadores de las mencionadas escrituras no sólo infringe la ley, sino que transgrede los principios éticos que rigen la conducta de los abogados-notarios en nuestra jurisdicción. En *In re Cruz Cruz*, 126 D.P.R. 448, 451 (1990), reafirmamos que el mecanismo para lograr corres-

pondencia real y legítima entre persona y firma es exigiendo la comparecencia y el conocimiento por el notario. Es decir, la fe de conocimiento persigue evitar la suplantación de las partes en el otorgamiento. La idea de compareciente va inexorablemente unida al hecho material de la presencia física ante notario. Esa comparecencia, hemos sostenido, implica su narración en la forma documental (instrumento) mediante la dación de fe de conocimiento de identidad. Véanse, además: *In re Olmo Olmo*, 113 D.P.R. 441, 451–452 (1982); *Sucn. Santos v. Registrador*, 108 D.P.R. 831, 837 (1979).

■  Con respecto a nuestra Ley Notarial, no cabe duda que ésta considera medular la comparecencia personal y el conocimiento de los firmantes. *Cintrón Ramos v. Registrador*, 144 D.P.R. 91 (1997). Sin la fe del conocimiento, sobran los notarios, por lo que su inobservancia siempre ha constituido una falta seria sujeta a estrictas medidas disciplinarias. *In re Cruz Cruz*, supra, pág. 454; *In re Echevarría González*, 116 D.P.R. 423 (1985); *In re Félix*, 104 D.P.R. 379 (1975). Parecería innecesario tener que reiterar, una vez más, la importancia suprema e ineludible de que los notarios observen escrupulosa y cuidadosamente el mandato de ley sobre comparecencia y conocimiento de los otorgantes.

■  Una vez el notario se aparta de cumplir con las obligaciones y deberes que le impone la ley y el ordenamiento ético, incurre en conducta que acarrea una sanción disciplinaria, ya que lesiona la confianza y la función pública en él investida. *In re Capestany Rodríguez*, 148 D.P.R. 728 (1999). Hemos catalogado las faltas como graves cuando, entre otras cosas, afectan la eficacia del documento mismo. *In re Madera Acosta*, 144 D.P.R. 743 (1998).

# III

Según indicado, el notario Ramos Vélez admite su negligencia. Aduce que se debió exclusivamente a "un error en su computadora" y no a conducta intencional o motivación dolosa. Ha tratado de corregir, en la medida de lo posible, sus errores; incluso está en disposición de resarcir económicamente a quienes resulten afectados por su actuación. Apreciamos el tenor sincero de su comparecencia, pero intereses públicos de mayor valía nos impiden limitar la sanción a una simple amonestación.

No es la primera vez que tenemos que disciplinar al licenciado Ramos Vélez. En *In re Ramos*, 104 D.P.R. 568 (1976), le impusimos una multa y lo suspendimos de la notaría por el término de un año por haber faltado a la fe notarial.

Considerando todas las circunstancias anteriormente reseñadas, se decreta su suspensión del ejercicio de la notaría por noventa (90) días y, además, se le impone una multa total de dos mil (2,000) dólares, a razón de quinientos (500) dólares en *cada uno* de los cuatro (4) casos. La multa será satisfecha mediante cheque certificado a nombre de la Secretaria de Hacienda, y será depositada en la Secretaría de este Tribunal dentro del término de treinta (30) días. Se ordena al Alguacil General que notifique personalmente al licenciado Ramos Vélez, se incaute de su obra notarial, incluso su sello notarial, y la remita a la Oficina de Inspección de Notarías para la inspección e informe correspondiente.

*Se dictará la correspondiente sentencia.*

Los Jueces Asociados Señores Rebollo López y Hernández Denton disintieron y limitarían la sanción disciplinaria a las multas económicas. El Juez Asociado Señor Fuster Berlingeri no intervino.