*In re* FLORENTINO MACHARGO BARRERAS.

*Número:* AB-2003-64          *Resuelto:* 16 de marzo de 2004

Roberto J. *Sánchez Ramos*, procurador general; *José A. Rivera Robles*, abogado de la parte querellada; *Sylvette A. Quiñones Mari*, juez superior.

PER CURIAM: En el caso de autos nos corresponde pasar juicio sobre la conducta de un notario que, en el trámite de traspasar una licencia de un vehículo de motor, dio fe de conocer al cedente sin percatarse que éste se estaba haciendo pasar por su padre.

I

El 9 de abril de 2003, el Tribunal de Primera Instancia, Sala de Caguas, remitió a este Tribunal copia de la Resolución y Orden que se dictó en el caso Civil Núm. EAC 2002-0145, *José Román Pastrana et als v. Félix Rodríguez Cruz et als.*, para nuestra consideración y trámite

correspondiente. La Resolución manifiesta, en esencia, que ante la Comisión de Servicio Público de Puerto Rico se presentó una solicitud de Autorización de Traspaso de Vehículo en la que aparecía como parte cedente el Sr. Germán Jiménez Caraballo. La referida solicitud la notarizó el notario Florentino Machargo Barreras, el querellado de epígrafe, el 16 de diciembre de 1997, quien dio fe de conocer tanto al cedente como al cesionario. No obstante, y según consta de su Certificado de Defunción, el Sr. Germán Jiménez Caraballo falleció el 30 de septiembre de 1990.

En vista de la información sometida ante este Tribunal, el 6 de junio de 2003 remitimos el asunto a la Oficina del Procurador General de Puerto Rico (Oficina del Procurador) para la investigación y el informe correspondientes. La Oficina del Procurador compareció oportunamente ante nos y expuso que el notario de epígrafe incurrió en violación al Art. 15 de la Ley Notarial de Puerto Rico (Ley Notarial),[1] 4 L.P.R.A. sec. 2033, y al Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.[2]

Visto el Informe del Procurador General, le dimos un término de veinte días al Lic. Florentino Machargo Barreras para que se expresara sobre dicho informe. Así lo hizo el querellado. De los referidos escritos se desprende el siguiente trasfondo fáctico y legal. Veamos.

El Lic. Florentino Machargo Barreras tuvo oficina privada en la calle Arzuaga números 155 y 157 de Río Piedras, justo frente a varios terminales de transportación pública. El querellado sostuvo que, en vista de la localización de su oficina y de que en varias ocasiones los representó legalmente, conocía por nombre y apellido práctica-

---

[1] Este artículo, no obstante, no aplica a la controversia de marras.

[2] Según consta en el Informe de la Oficina del Procurador General, los hechos que dan pie a la Resolución del Tribunal de Primera Instancia y que motivan la presente queja tienen su origen en una demanda por incumplimiento de contrato que presentaron el Sr. José Román Pastrana, la Sra. Diana I. Delgado Vallejo y la sociedad legal de gananciales compuesta por ambos contra Félix Rodríguez Cruz, Brenda Esquilín y la sociedad legal de gananciales compuesta por ambos, caso Civil Núm. EAC 2002-0145.

mente a todos los porteadores públicos o camioneros que daban servicios desde esos terminales. También indicó que durante su práctica notarial había hecho aproximadamente cuarenta y cinco mil affidávit, principalmente de traspasos de licencias.

Según se deduce de la comparecencia del licenciado Machargo Barreras, el querellado conoció por muchos años al Sr. Germán Jiménez, quien fue su cliente en varios casos criminales relacionados a la conducción del vehículo de motor objeto del traspaso aquí en cuestión. Indicó que el 16 de diciembre de 1997, el Sr. Germán Jiménez compareció a su oficina para hacer el traspaso del referido autobús y, como lo conocía hacía tantos años, hizo constar tal hecho en el affidávit. Señaló que ese día el señor Jiménez dijo que su segundo apellido era Caraballo y que no tenía razón para dudarlo. No fue hasta que recibió la querella de epígrafe que se percató que el señor Jiménez utilizó el segundo apellido de su padre como si fuera su segundo apellido. Afirmó el letrado de epígrafe que en el momento en que ocurrieron los hechos no le pidió identificación al señor Jiménez debido a que lo conocía hacía muchos años —incluso lo había representado legalmente en varias ocasiones— y siempre lo había visto conduciendo el vehículo objeto del traspaso. Afirmó, además, que no tenía conocimiento de que el señor Jiménez Caraballo fuera el padre del señor Jiménez ni que éste fuera el dueño de la licencia del vehículo. Sostuvo que el señor Jiménez abusó de su buena fe al utilizar el apellido de su padre y que, de haber conocido tal hecho, jamás hubiese otorgado el affidávit. El querellado señaló por último que, por motivos de salud, cerró su oficina legal después de treinta años de práctica honorable y que en esos años nunca tuvo una querella. Luego de contar con el beneficio de las comparecencias de las partes, resolvemos.

## II

A. En síntesis, en el caso de marras nos corresponde examinar la actuación del licenciado Machargo Barreras a la luz de las disposiciones de la Ley Notarial y de los cánones del Código de Ética Profesional.

■ Según expusimos años atrás en el caso *Rodríguez Vidal v. Benvenutti*, 115 D.P.R. 583 (1984), la palabra "affidávit" es una expresión latina que se deriva de *affido*, la cual significa "doy fe". Un affidávit es una declaración de autenticidad mediante el cual un notario, u otro de los funcionarios designados en ley, certifica o da fe de la verdad o reconocimiento de una firma, de un juramento o de otro hecho o contrato que afecte la propiedad mueble o inmueble, no formalizados en escritura pública.(³) En resumen, un affidávit es un documento auténtico que da fe pública de un acto en particular, aunque no de su contenido.

■ La importancia de la certificación que hace el notario de la autenticidad de la firma está en que presupone una correspondencia real y legítima entre el compareciente y la firma. *In re Olmo Olmo*, 113 D.P.R. 441 (1982). Ello persigue evitar la suplantación de las partes en el otorgamiento. Véase *Sucn. Santos v. Registrador*, 108 D.P.R. 831, 837 (1979).

Es decir, en el affidávit el notario certifica y da fe de la autenticidad de la firma de una persona, lo que supone un conocimiento directo, personal e indubitado de la persona que suscribe. *Rodríguez Vidal v. Benvenutti*, supra, pág. 589, citando a P. Malavet Vega, *Compendio de derecho notarial puertorriqueño: conforme a la Ley Núm. 75 de 1987, la jurisprudencia y la doctrina*, Ponce, [s. Ed.], 1987, pág. 98.

---

(³) Véanse: 4 L.P.R.A. sec. 2091; 4 L.P.R.A. ant. sec. 887.

En el descargo de esa importante gestión de autenticar firmas, la Ley Notarial le impuso al notario el deber de dar fe del conocimiento personal de los firmantes o del testigo de conocimiento, o hacer constar que ha identificado a los otorgantes mediante los medios supletorios que dispone la propia ley. 4 L.P.R.A. sec. 2092.

Nuestro ordenamiento jurídico considera un asunto medular la comparecencia personal y el conocimiento de los firmantes. Por ello su inobservancia siempre ha constituido una falta seria sujeta a medidas disciplinarias. *In re Félix*, 104 D.P.R. 379 (1975); *In re Echevarría González*, 116 D.P.R. 423 (1985). Hemos sido particularmente rigurosos cuando se trata de violaciones de ese tipo en las declaraciones juradas de traspaso de vehículos de motor. Ello en vista a la alta incidencia de traspasos fraudulentos que se gestionan en Puerto Rico a diario. *In re Nieves Rivera*, 124 D.P.R. 803 (1989) (en este caso se suspendió indefinidamente al señor Nieves Rivera del ejercicio de la abogacía y notaría por reiteradamente dar fe de conocimiento y de que los comparecientes firmaban el documento ante él —lo que no era cierto— haciendo viable el traspaso de vehículos hurtados; los "otorgantes" nunca comparecieron ante él y las firmas fueron falsificadas); *In re González González*, 119 D.P.R. 496 (1987) (se suspendió al señor González González del ejercicio de la notaría por el período de un año por otorgar un traspaso de licencia de vehículo de motor sin que una de las partes compareciera ante él).

No obstante, también hemos señalado en numerosas ocasiones que la dación de fe de conocimiento de una persona que otorga un notario no implica un deber de investigación exhaustiva de su parte, *aunque sí de averiguaciones mínimas. Cintrón Ramos v. Registrador*, 144 D.P.R. 91 (1997). Hemos expresado que conocer personalmente a alguien para dar fe notarial sin utilizar algún método supletorio de conocimiento, implica solamente dar fe

de que la persona que comparece a firmar es la misma que, *según el conocimiento personal del notario*, alega ser. *Cintrón Ramos v. Registrador*, supra; *In re Ramos Vélez*, 151 D.P.R. 186 (2000). Según expusimos en *In re Olmo Olmo*, supra, págs. 462–463:

> La clave a todo el problema es exigir la fe de conocimiento, "... entendiéndola en sus justos términos, es decir, no considerar que se trata de una verdad absoluta y que al mínimo error del Notario éste debe responder sino que, como posteriormente veremos, estamos ante una verdad relativa ya que de otro modo se descargaría sobre el Notario una obligación que excedería de sus posibilidades imposible fuera de un reducido número de pues la identidad objetiva de una persona, como tuvimos ocasión de ver, es prácticamente personas allegadas al Notario. Por ello exigir este conocimiento supondría o bien un incumplimiento, por imposibilidad de llevarlo a la práctica, y consiguientemente el vivir los Notarios bajo la contínua infracción legal o bien un verdadero ostracismo profesional que llevaría aparejado un duro golpe a esta Institución. Por otro lado la responsabilidad también debe ser entendida en sus justas proporciones de tal manera que no puede existir responsabilidad por una actuación exenta de la más ligera culpa aunque la fe de conocimiento no se ajuste a la realidad". Ventoso Escribano, [*La fe de conocimiento, antecedentes, y estado actual de la cuestión en el Derecho español*, 96 (Núm. 337) Rev. Der. Not.] 361–362 [(1977)].

Por otro lado, en *Cintrón Ramos v. Registrador*, supra, señalamos que la ley no le exige al notario el conocimiento personal de los otorgantes en el concepto de una relación previa a su llegada a la notaría. De hecho, basta el conocimiento que el notario deriva de su observación de los otorgantes, identificándose mutuamente en las etapas preliminares del acto jurídico notarial, toda vez que, con rarísimas excepciones en que dos partes se ponen de acuerdo para defraudar, los otorgantes tienen tanto interés como el notario en la transmisión de un título válido, y debe suponerse que en los contratos bilaterales el que contrata con una persona obligándose a su favor y estipulando derechos le conoce perfectamente.

■    B. Por su parte, el Canon 35 del Código de Ética Profesional, *supra*, dispone en lo pertinente que:

> *El abogado debe ajustarse a la sinceridad de los hechos al examinar testigos, al redactar affidávit u otros documentos, y al presentar causas.* (Énfasis suplido.)

Al analizar este canon en el caso *In re Tejada Rivera I*, 155 D.P.R. 175 (2001), afirmamos que cualquier hecho que asevere un notario en un instrumento público que no concuerde con la verdad constituye una violación al citado Canon 35 del Código de Ética Profesional, *independientemente de si hubo intención de faltar a la verdad.*

### III

En el caso de marras, el licenciado Machargo Barreras otorgó un affidávit en el que dio fe de conocer personalmente a los otorgantes. Según señaló el referido letrado, éste conocía hacía años al Sr. Germán Jiménez, cedente del título en cuestión, ya que incluso lo había representado legalmente en varias ocasiones. Conocía su nombre y primer apellido, y lo había visto frecuentemente transitando en el vehículo objeto del traspaso. No obstante, no conocía el segundo apellido del cedente y confió plenamente en lo aseverado por el señor Jiménez a los efectos de que su segundo apellido era Caraballo. Ello, sin percatarse de que el señor Jiménez se estaba haciendo pasar por su padre, quien había fallecido hacía años, y quien aún figuraba como titular del vehículo.

Aún si aceptáramos como cierto el hecho de que el licenciado Machargo Barreras cometió un error de buena fe, su actuación constituye una violación muy seria de la Ley Notarial. La función del notario exige mayor prudencia y cautela a la hora de otorgar documentos. *La legitimidad y confianza pública en la notaría requieren que los notarios observen escrupulosamente el mandato de ley sobre compa-*

*recencia y conocimiento de los otorgantes, particularmente en instancias de traspasos de licencias de vehículos de motor.*

Examinados los hechos descritos anteriormente y conscientes del buen historial del licenciado Machargo Barreras en la profesión, circunscribimos la sanción disciplinaria a una suspensión de un mes del ejercicio de la notaría.

El Alguacil del Tribunal Supremo procederá a incautarse de su obra y sello notarial, debiendo entregarlos a la Oficina de Inspección de Notarías para el correspondiente examen e informe a este Tribunal.

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Corrada Del Río se inhibió.