EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | Queja |
| | |
| Florentino Machargo Barreras | 2004 TSPR 50 |
| | 161 DPR _____ |

Número del Caso: AB-2003-64

Fecha: 16 de marzo de 2004

Oficina del Procuradora General:

                    Lcda. Noemí Rivera de Léon
                    Procuradora General Auxiliar

Abogado del Querellado:
                    Lcdo. José A. Rivera Robles

Materia: Conducta Profesional
        (La suspensión del abogado advino final y firme el día
        6 de abril de 2004.)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Florentino Machargo Barreras

AB-2003-64

PER CURIAM

San Juan, Puerto Rico, a 16 de marzo de 2004.

En el caso de autos nos corresponde pasar juicio sobre la conducta de un notario que, en el trámite de traspasar una licencia de un vehículo de motor, dio fe de conocer al cedente sin percatarse que éste se estaba haciendo pasar por su padre.

I

El 9 de abril de 2003, el Tribunal de Primera Instancia, Sala de Caguas remitió a este Tribunal copia de la Resolución y Orden dictada en el caso Civil Núm. EAC 2002-0145, *José Román Pastrana et als v. Félix Rodríguez Cruz et als,* para nuestra consideración y trámite correspondiente. Dicha Resolución manifiesta, en esencia, que ante la

Comisión de Servicio Público de Puerto Rico se presentó una solicitud de Autorización de Traspaso de Vehículo en la que aparecía como parte cedente el Sr. Germán Jiménez Caraballo. La solicitud de Autorización de Traspaso fue notarizada por el Notario Florentino Machargo Barreras, el querellado de epígrafe, el 16 de diciembre de 1997, quien dio fe de conocer tanto al cedente como al cesionario. No obstante, y según consta de su Certificado de Defunción, el Sr. Germán Jiménez Caraballo falleció el 30 de septiembre de 1990.

En vista de la información sometida ante este Tribunal, el 6 de junio de 2003 remitimos el asunto a la Oficina del Procurador General de Puerto Rico (en adelante, "Oficina del Procurador") para la investigación e Informe correspondiente. La Oficina del Procurador compareció oportunamente ante nos y expuso que el notario de epígrafe incurrió en violación al Art. 15 de La Ley Notarial,[1] 4 L.P.R.A. 2033, y al Canon 35 del Código de Ética Profesional.[2]

---

[1]   Este Artículo, no obstante, no es aplicable a la controversia de marras.

[2] Según consta en el Informe de la Oficina del Procurador, los hechos que dan pie a la Resolución del Tribunal de Primera Instancia y que motivan la presente queja tienen su origen en una demanda por incumplimiento de contrato presentada por el Sr. José Román Pastrana, la Sra. Diana I. Delgado Vallejo y la sociedad legal de gananciales compuesta por ambos contra Félix Rodríguez Cruz, Brenda Esquilín y la Sociedad Legal de Gananciales compuesta por ambos, caso Civil Núm. EAC 2002-0145.

Visto el Informe del Procurador, le dimos un término de veinte (20) días al Lic. Florentino Machargo Barreras para que se expresara sobre dicho Informe. Así lo hizo el querellado. De los referidos escritos se desprende el siguiente trasfondo fáctico y legal. Veamos.

El Lic. Florentino Machargo Barreras tuvo oficina privada en la calle Arzuaga número 155 y 157 de Río Piedras, justo frente a varios terminales de transportación pública. El querellado sostuvo que, en vista de la localización de su oficina y de que en varias ocasiones los representó legalmente, conocía por nombre y apellido prácticamente a todos los porteadores públicos y/o camioneros que daban servicios desde dichos terminales. También indicó que durante su práctica notarial había hecho aproximadamente 45,000 affidavits, principalmente de traspasos de licencias.

Según se desprende de la comparecencia del licenciado Machargo Barreras, el querellado conoció por muchos años al Sr. Germán Jiménez, quien fue su cliente en varios casos criminales relacionados a la conducción del vehículo de motor objeto del traspaso aquí en cuestión. Indicó que el 16 de diciembre de 1997, el Sr. Germán Jiménez compareció a su oficina para hacer el traspaso del referido autobús y, como lo conocía hacía tantos años, hizo constar tal hecho en el affidávit. Señaló que ese día el señor Jiménez dijo que su segundo apellido era Caraballo y que no tenía razón

para dudarlo. No fue hasta que recibió la querella de epígrafe que se percató que el señor Jiménez utilizó el segundo apellido de su padre como si fuera su segundo apellido. Afirmó el letrado de epígrafe que en el momento en que ocurrieron los hechos no le pidió identificación al señor Jiménez debido a que lo conocía hacía muchos años, incluso lo había representado legalmente en varias ocasiones, y siempre lo había visto conduciendo el vehículo objeto del traspaso. Afirmó además que no tenía conocimiento de que el señor Jiménez Caraballo fuera el padre del señor Jiménez, ni que éste fuera el dueño de la licencia del vehículo. Sostuvo que el señor Jiménez abusó de su buena fe utilizando el apellido de su padre, y que de haber conocido tal hecho jamás hubiese otorgado dicho affidávit. El querellado señaló por último que, por motivos de salud, cerró su oficina legal después de treinta (30) años de práctica honorable y que en esos años nunca tuvo una querella. Luego de contar con el beneficio de las comparecencias de las partes, resolvemos.

II

A

En síntesis, en el caso de marras nos corresponde examinar la actuación del licenciado Machargo Barreras a la luz de las disposiciones de la Ley Notarial y los Cánones de Ética Profesional, *supra*.

Según expusimos años atrás en el caso <u>Rodríguez Vidal</u> <u>v. Benvenutti</u>, 115 D.P.R. 583 (1984), la palabra affidávit es una expresión latina que se deriva de *affido*, la cual significa 'doy fe'. Un affidávit es una declaración de autenticidad mediante el cual un notario, u otro de los funcionarios designados en ley, certifica o da fe de la verdad o reconocimiento de una firma, de un juramento o de otro hecho o contrato que afecte la propiedad mueble o inmueble, no formalizados en escritura pública.[3] En resumen, un affidávit es un documento auténtico que da fe pública de un acto en particular, aunque no de su contenido.

La importancia de la certificación que hace el notario de la autenticidad de la firma radica en que presupone una correspondencia real y legítima entre el compareciente y la firma. <u>In re Olmo Olmo</u>, 113 D.P.R. 441 (1982). Ello persigue evitar la suplantación de las partes en el otorgamiento. *Véase*, <u>Sucn. Santos v. Registrador</u>, 108 D.P.R. 831, 837 (1979).

Es decir, en el affidávit el Notario certifica y da fe de la autenticidad de la firma de una persona, lo que supone un conocimiento directo, personal e indubitado de la persona que suscribe. <u>Rodríguez Vidal v. Benvenutti</u>, *supra* citando a Malavet Vega, *Compendio de Derecho Notarial Puertorriqueño,* Pág. 98 (1989).

---

[3] Véase, 4 L.P.R.A. 2091, y 4 L.P.R.A.887, ya derogada.

En el descargo de esa importante gestión de autenticar firmas, la Ley Notarial le impuso al Notario el deber de dar fe del conocimiento personal de los firmantes o del testigo de conocimiento, o hacer constar que ha identificado a los otorgantes mediante los medios supletorios que dispone la propia ley. 4 L.P.R.A. 2092.

Nuestro ordenamiento jurídico considera un asunto medular la comparecencia personal y el conocimiento de los firmantes. Por ello su inobservancia siempre ha constituido una falta seria sujeta a medidas disciplinarias. In re: Félix, 104 D.P.R. 379 (1975); In re: Echevarría González, 116 D.P.R. 423 (1985). Hemos sido particularmente rigurosos cuando se trata de violaciones de ese tipo en las declaraciones juradas de traspaso de vehículos de motor. Ello, en vista a la alta incidencia de traspasos fraudulentos que se gestionan en Puerto Rico a diario. In re: Nieves Rivera, 124 D.P.R. 803 (1989) (En este caso se suspendió indefinidamente al señor Nieves Rivera del ejercicio de la abogacía y notaría por reiteradamente dar fe de conocimiento y de que los comparecientes firmaban el documento ante él—lo que no era cierto-- haciendo así viable el traspaso de vehículos hurtados. Los "otorgantes" nunca comparecieron ante él y las firmas eran falsificadas); In re: González González, 119 D.P.R. 496 (1987)(Se suspendió al señor González González del ejercicio de la notaría por período de un año por otorgar

un traspaso de licencia de vehículo de motor sin que una de

las partes compareciera ante él.

No obstante, también hemos señalado en numerosas

ocasiones que la dación de fe de conocimiento de una

persona por un notario no implica un deber de investigación

exhaustiva de éste, aunque sí de averiguaciones mínimas.

Cintrón Ramos v. Borrás Marín, 144 D.P.R. 91 (1997). Hemos

expresado que conocer personalmente a alguien, para dar fe

notarial sin utilizar algún método supletorio de

conocimiento, implica solamente dar fe de que la persona

que comparece a firmar es la misma que, según el

conocimiento personal del notario, alega ser. Cintrón Ramos

v. Borrás Marín, *supra*; In re: Ramos Vélez, res el 1 de

junio de 2000, 2000 TSPR 82. Según expusimos en In re: Olmo

Olmo, *supra*:

> La clave a todo el problema es exigir la fe
> de conocimiento, 'entendiéndola en sus justos
> términos, es decir, no considerar que se
> trata de una verdad absoluta y que al mínimo
> error del notario éste debe responder sino
> que, como posteriormente veremos, estamos
> ante una verdad relativa ya que de otro modo
> se descargaría sobre el Notario una
> obligación que excedería de sus posibilidades
> pues la identidad objetiva de una persona,
> como tuvimos ocasión de ver, es prácticamente
> imposible fuera de un reducido número de
> personas allegadas al Notario. Por ello
> exigir este conocimiento supondría o bien un
> incumplimiento, por imposibilidad de llevarlo
> a la práctica, y consiguientemente el vivir
> los Notarios bajo la continua infracción
> legal o bien un verdadero ostracismo
> profesional que llevaría aparejado un duro
> golpe a esta Institución. Por otro lado la
> responsabilidad también debe ser entendida en
> sus justas proporciones de tal manera que no

pueda existir responsabilidad por una actuación exenta de la más ligera culpa aunque la fe de conocimiento no se ajuste a la realidad'. Ventoso Escribano, *La fe de conocimiento, antecedentes, y estado actual de la cuestión en el Derecho español*, 96 Rev. Der. Notarial, Nm. 337,361-362 (1977).

Por otro lado, en Cintrón Ramos v. Registrador, *supra*, señalamos que la Ley no exige el conocimiento personal de otorgantes por el notario en el concepto de una relación previa a su llegada a la notaría. De hecho, basta el conocimiento que el notario deriva de su observación de los otorgantes identificándose mutuamente en las etapas preliminares del acto jurídico notarial, toda vez que, con rarísimas excepciones en que dos partes se ponen de acuerdo para defraudar, los otorgantes tienen tanto interés como el notario en la transmisión de un título válido, y debe suponerse que en los contratos bilaterales el que contrata con una persona obligándose a su favor y estipulando derechos, le conoce perfectamente.

B

Pos su parte, el Canon 35 de Ética Profesional dispone en lo pertinente que:

*El abogado debe ajustarse a la sinceridad de los hechos al examinar testigos, al redactar affidávit u otros documentos, y al presentar causas.*

Al analizar dicho canon en el caso In re: Tejado Rivera, res el 24 de septiembre de 2001, 2001 T.S.P.R. 136, afirmamos que cualquier hecho aseverado en un instrumento

público por un notario que no concuerde con la verdad constituye una violación al Canon 35 del Código de Ética Profesional, <u>independientemente de si hubo intención de faltar a la verdad.</u>

## III

En el caso de marras, el licenciado Machargo Barreras otorgó un affidávit en el que dio fe de conocer personalmente a los otorgantes. Según señaló el referido letrado, éste conocía hacía años al señor Germán Jiménez, cedente del título en cuestión, ya que incluso lo había representado legalmente en varias ocasiones. Conocía su nombre y primer apellido, y lo había visto frecuentemente transitando en el vehículo objeto del traspaso. No obstante, no conocía el segundo apellido del cedente y confió plenamente en lo aseverado por el señor Jiménez a los efectos de que su segundo apellido era Caraballo. Ello, sin percatarse de que el señor Jiménez se estaba haciendo pasar por su padre, quien había fallecido hacía años, y quien aún figuraba como titular del vehículo.

Aún si aceptáramos como cierto el hecho de que el licenciado Machargo Barreras cometió un error de buena fe, su actuación constituye una violación muy seria de la Ley Notarial. La función del Notario exige mayor prudencia y cautela a la hora de otorgar documentos. <u>La legitimidad y confianza pública en la notaría requieren que los notarios observen escrupulosamente el mandato de ley sobre</u>

<u>comparecencia y conocimiento de los otorgantes,</u> <u>particularmente en instancias de traspasos de licencias de</u> <u>vehículos de motor.</u>

Examinados los hechos descritos anteriormente y conscientes del buen historial del licenciado Machargo Barreras en la profesión, circunscribimos la sanción disciplinaria a una suspensión de un (1) mes del ejercicio de la notaría.

El Alguacil del Tribunal Supremo procederá a incautarse de su obra y sello notarial, debiendo entregar los mismos a la Oficina de Inspección de Notarías para el correspondiente examen e Informe a este Tribunal.

Se dictará la Sentencia correspondiente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Florentino Machargo Barreras

AB-2003-64

SENTENCIA

San Juan, Puerto Rico, a 16 de marzo de 2004.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte integrante de la presente, se dicta sentencia y se suspende por un período de un (1) mes al Lic. Florentino Machargo Barreras del ejercicio de la notaría.

El Alguacil del Tribunal Supremo procederá a incautarse de su obra y sello notarial, debiendo entregar los mismos a la Oficina de Inspección de Notarías para el correspondiente examen e Informe a este Tribunal.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Corrada del Río está inhibido.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo