Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>José A. De la Texera Barnes | 2009 TSPR 172<br><br>177 DPR _____ |

Número del Caso: TS-4190

Fecha: 10 de noviembre de 2009

Abogado del Peticionario:

      Por derecho propio

Oficina de Inspección de Notarías:

      Lcda. Lourdes I. Quintana Lloréns
      Directora

Materia: Derecho Notarial

Este documento constituye un documento oficial del    Tribunal Supremo que está sujeto a los cambios y correcciones del pr    oceso de compilación y publicación oficial de las decisiones    del Tribunal. Su distribución electrónica se hace como un servici    o público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re:

José A. De La Texera Barnés          TS-4190

PER CURIAM

En San Juan, Puerto Rico, a 10 de noviembre de 2009.

I

El Lcdo. José A. De La Texera Barnés fue admitido al ejercicio de la abogacía y notaría el 15 de enero de 1973 y el 1 de febrero de 1973 respectivamente.

El 6 de febrero de 2004, el licenciado De La Texera Barnés realizó una declaración de autenticidad en un testamento ológrafo que fue identificado en su registro de testimonios como *affidavit* núm. 8181. Esta actuación y tres testimonios adicionales son objetos de este recurso. Los otros testimonios tienen las

TS-4190

siguientes fechas: 6 de febrero de 2004, 16 de abril de 2004 y 6 de abril de 2005. La Directora de la Oficina de Inspección de Notarías (en adelante ODIN) comparece ante nos solicitando que nos expresemos respecto a la validez de los testimonios. En síntesis, ODIN recomienda a este Tribunal "que determine que la práctica de autenticar la firma en los testamentos ológrafos queda expresamente prohibida". Moción en cumplimiento de resolución, pág. 3.

En estos testimonios consta la firma y sello del notario dando fe de la identidad del testador con sus circunstancias personales. Iguales afirmaciones contienen los otros tres testimonios. Como parte de una inspección de su obra notarial, la inspectora encargada de su protocolo le notificó al licenciado De La Texera Barnés faltas por estos testimonios. ODIN sostiene que la práctica de realizar declaraciones de autenticidad en los testamentos ológrafos va en contra de la propia naturaleza de estos documentos por su "carácter completamente privado" y "secreto". Informe de ODIN, págs. 4 y 8. Añade ODIN que esta cualidad se pierde con la intervención de un notario. Además, ODIN argumenta que esta práctica incide con el procedimiento de adveración y protocolización dispuesto en nuestro Código Civil. ODIN fundamenta este argumento en que esta actuación incide sobre las funciones que un tribunal tendrá que llevar en el proceso de adveración y protocolización de un testamento ológrafo.

TS-4190

Por lo anterior, ODIN solicita que decretemos de forma prospectiva que este tipo de acto en un testamento ológrafo está prohibido. Además, ODIN recomienda que ordenemos al licenciado De La Texera Barnés suspender dicha práctica. Por su parte, el licenciado Texera Barnés nos solicita que decretemos la validez de esta actuación en testamentos ológrafos y declaremos que es una práctica buena y conveniente. El notario sostiene que dicha declaración de autenticidad facilitará al tribunal, cuando se le presente un testamento ológrafo para su adveración, el proceso de protocolización y adveración. Expresa el notario que "la bondad de la modificación procesal" que le ha hecho "a los testamentos ológrafos estriba en que se facilita la prueba con relación a los requisitos" del testamento. Réplica al informe de ODIN, pág. 4.

Ya que contamos con las comparecencias de ODIN y del licenciado De La Texera Barnés, procedemos a resolver la cuestión planteada sin ulterior trámite, en el ejercicio de nuestra función de supervisar la práctica de la notaría.

II-A

El Art. 2 de la Ley Notarial de Puerto Rico, Ley Núm. 7 de 2 de julio de 1987, 4 L.P.R.A. sec. 2002, dispone que el notario es el profesional del Derecho que ejerce la función pública, autorizado para dar fe y

autenticidad conforme a las leyes, de los negocios jurídicos y demás actos y hechos extrajudiciales.

Los instrumentos públicos son los documentos que recopila el Protocolo notarial. Entre éstos se hayan las escrituras públicas y las actas notariales. 4 L.P.R.A. sec. 2031; C.R. Urrutia De Basora y L.M. Negrón Portillo, Curso de Derecho Notarial Puertorriqueño, San Juan, C.R. Urrutia De Basora y L.M. Negrón Portillo, 1997. T. 1, pág. 156. Un acta notarial es un documento en donde el notario hace constar hechos y circunstancias que presencien o le consten de propio conocimiento, y que por su propia naturaleza no constituyan un contrato o negocio jurídico. Art. 30 de la Ley Notarial, supra, 24 L.P.R.A. sec. 2048.

Por otra parte y con distinta finalidad, una declaración de autenticidad o testimonio es la actuación del notario como testigo con la facultad fedataria que le ha reconocido el Estado. P. Malavet Vega, Derecho Notarial y Minutas Registrales en Puerto Rico, Ponce, P.R., Ed. Lorena, 2005, pág. 135. Una declaración de autenticidad "es la expresión de fe pública de la legitimidad de algo, ya sea una acción, o la fidelidad documental". Id., pág. 136. En el campo notarial esta autenticación puede referirse a un juramento, firma, fidelidad de copia, traducción o reproducción gráfica. Id. El testimonio del notario es una declaración de

TS-4190

autenticidad que puede referirse a una firma, un juramento u otro hecho, acto o contrato. Id., pág. 138.

La palabra *affidavit* es una expresión latina que proviene de la palabra *affido* que significa doy fe. Id., pág. 136. Esto es, un *affidavit* es una declaración formal de autenticidad que puede ser realizada por un notario de acuerdo a la Ley Notarial, supra. El testimonio o declaración de voluntad es una actuación notarial distinta de los instrumentos públicos formales (escrituras y actas). Malavet Vega, op cit., pág. 137.

Según la Regla 65 del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV R. 65, el testimonio o declaración de autenticidad es "la actuación y documento notarial que no va al Protocolo, en el que el Notario expresa, bajo su fe notarial, sello y firma, sobre la veracidad de un hecho ocurrido ante él o que le conste". Véase además, In re Rivera Aponte, Opinión de 19 de diciembre de 2006, 2007 T.S.P.R. 14, 2007 J.T.S. 19, 169 D.P.R. __ (2006). Un *affidavit* es "un documento auténtico que da fe pública de un acto en particular, aunque no de su contenido". In re Machargo Barreras, 161 D.P.R. 364, 369 (2004). Por eso, un asiento incluido en el Registro de Testimonios se considera exacto, mientras no se pruebe lo contrario. Malavet Vega, op cit., pág. 151.

La Ley Notarial dispone que un testimonio o declaración de autenticidad es la declaración de fe hecha por un notario de un documento no matriz, "además de la

fecha del testimonio y" (1) legitimación de firmas siempre que no se trate de actos comprendidos en los incisos del (1) al (6) del Art. 1232 del Código Civil, 31 L.P.R.A. sec. 3453; (2) de haber tomado juramento por escrito; (3) de una traducción fiel y exacta; (4) de una copia fiel y exacta; o, (5) de la identidad de cualquier objeto o cosa. Art. 56 de la Ley Notarial, supra, sec. 2091.

> [L]a Regla 67 [del Reglamento Notarial] define el testimonio de legitimación de firma como aquél en el que se acredita el hecho de que, en determinada fecha, se firmó un documento en presencia del notario, y que esa persona es quien dice ser. Indica además que la legitimación de firma podrá o no comprender el juramento, y que el notario tiene que hacer constar, tanto en el testimonio como en el Registro de Testimonios, que conoce personalmente al firmante o que lo ha identificado. In re Llanis Menéndez, Opinión de 31 de octubre de 2008, 2008 T.S.P.R. 179, 2008 J.T.S. 199, pág. 227, 175 D.P.R. __ (2008).

Queda prohibido a un notario hacer un testimonio o legitimar firmas sobre ciertos negocios contenidos en el Art. 1232 del Código Civil, supra. Éstos son: (1) la creación, transmisión, modificación o extinción de derechos reales sobre bienes inmuebles; (2) arrendamientos sobre bienes inmuebles por más de seis años cuando perjudiquen a terceros; (3) capitulaciones matrimoniales; (4) cesión, repudiación y renuncia de derechos hereditarios o de la sociedad conyugal; (5) poder general de pleitos y especiales a presentarse en juicio, poder para administrar bienes, y cualquier otro para un acto a realizarse en escritura pública o que

tenga que afectar a terceros; y (6) la cesión de acciones o derechos procedentes de un acto consignado en escritura pública. Véanse, Art. 1232 del Código Civil, supra; Art. 57 de la Ley Notarial, supra, sec. 2092; y Regla 68 del Reglamento Notarial, supra, R. 68. La parte que interese la intervención de un notario en estos negocios tendrá que otorgar una escritura pública. Malavet Vega, op cit., pág. 142.

Al legitimar una firma se dan garantías sobre la identidad del firmante y el hecho de realizar el acto ante el notario. Id., pág. 139. En este supuesto, el notario certifica la veracidad de la firmas, no del contenido del documento. Ibid.

B

El acto de testar es aquél por el cual una persona dispone, para después de su muerte, de todos sus bienes o parte de ellos. Art. 616 del Código Civil, supra, sec. 2121. El testamento "es el acto por el cual manifestamos nuestra última voluntad para que ésta sea cumplida después de la muerte". G. Velázquez citando a Modestino, Teoría del Derecho Sucesorio Puertorriqueño, 2d ed., S.J., P.R., Ed. Equity, 1968, pág. 161. El Código Civil reconoce bastante libertad a las personas para disponer de sus bienes. E. González Tejera, Derecho de Sucesiones, San Juan, P.R., Editorial de la Universidad de Puerto Rico, 2002, T. II, pág. 101.

TS-4190

Los testamentos pueden ser clasificados como privados, públicos o mixtos. Un testamento público es aquél en los que la declaración de la voluntad se hace ante funcionarios del Estado, como ocurre con el testamento abierto; un testamento privado es aquél en donde el testador actúa por sí solo, sin el consentimiento o la asistencia de testigos y de notario; y un testamento mixto es aquél que posee características del público y privado, como el testamento cerrado. González Tejera, op cit., pág. 102. En tiempos de Roma el único testamento permitido era el público, el cual era otorgado ante los comicios. Con posterioridad a las XII Tablas surgió en el mundo romano el testamento privado en donde se reconocía una forma de testar sin tener que acudir a la refrendación de los comicios. Id.

El testamento ológrafo es un testamento privado pues no exige la presencia de testigos o de notario. Arts. 627 y 637 del Código Civil, supra, secs. 2143 y 2161. Así se logra el "propósito de mantener secreto, a discreción del testador, tanto el hecho del otorgamiento como su contenido". González Tejera, op cit., pág. 163.

La ventaja del testamento ológrafo reside en lo cómodo y sencillo de otorgarlo, y que está disponible a todos los grupos económicos, "particularmente a los más pobres, porque su costo es, a corto plazo al menos, inexistente". Id., pág. 106. La comodidad del testamento ológrafo reside en el poder de hacer un acto de última

voluntad sin tener que recurrir a los servicios de un notario o de otro funcionario. Velázquez, _op cit._, pág. 165.

Los requisitos del testamento ológrafo son: (1) estar todo escrito a puño y letra del testador; (2) la expresión del año, mes y día del otorgamiento; y (3) que esté firmado por el testador. Art. 637 del Código Civil, _supra_. La firma del testador en un testamento ológrafo es la corroboración de la conformidad del testador con su contenido, la autenticación de tal acto y la identificación del testador. González Tejera, _op cit._, págs. 132-134. El testamento ológrafo debe adverarse y protocolizarse, presentándolo en la sala del Tribunal de Primera Instancia del último domicilio del testador, o la del lugar en Puerto Rico en que éste hubiese fallecido. La presentación debe hacerse dentro de cinco (5) años desde el fallecimiento del testador. Art. 639 del Código Civil, _supra_, sec. 2163. Una vez presentado el testamento ológrafo, el tribunal debe proceder a su lectura.

El proceso de adveración y protocolización está gobernado por el Art. 551A del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2280a. El tribunal deberá comprobar la identidad del testamento por medio de tres (3) testigos que conozcan la letra y firma del testador, y que declaren que no abrigan duda racional de que el testamento fue escrito y firmado por el testador. A falta de testigos idóneos, o si hay dudas, puede emplearse

TS-4190

prueba pericial de letras. Una vez el tribunal determina la identidad del testamento ordenará su protocolización. Este método de identificación responde al requisito de que el testamento tiene que estar escrito a mano por el testador. Art. 637 del Código Civil, supra, sec. 2161.

III

Con el beneficio de las normas antes descritas, pasamos a evaluar los hechos que motivan la presente controversia. Estos son, las actuaciones del licenciado De La Texera Barnés de legitimar las firmas de cuatro (4) testadores en el otorgamiento de sus respectivos testamentos ológrafos. Somos del criterio que las actuaciones del licenciado, por sí solas, no son contrarias a nuestro Derecho notarial.

Los testamentos ológrafos no están contenidos en la lista estatutaria de los documentos que deben contar en un instrumento público. Véanse, Art. 1232 del Código Civil, supra sec. 3453; Art. 57 de la Ley Notarial, supra, sec. 2092; y Regla 68 del Reglamento Notarial, supra, R. 68. Por lo tanto, un notario no está vedado de autenticar la firma de un testador en esta clase de testamento.

ODIN sostiene que dicha prohibición debe establecerla este Tribunal por ser contraria a la característica de secretividad y al proceso de adveración y protocolización de los testamentos ológrafos. No podemos acceder a esa petición. Aunque una de las

ventajas del testamento ológrafo es que el testador puede otorgarlo secretamente, para evitar la no divulgación de su otorgamiento y contenido, esto no tiene que ser así necesariamente. Nada impide que el testador divulgue el contenido de su testamento ológrafo. De hecho, eso sucede cuando lo deposita en manos de un tercero, "porque el carácter secreto del acto de otorgar el testamento ológrafo no es requisito indispensable de validez". González Tejera, op cit., pág. 145. El testador pudiera darle la publicidad que desee a este tipo de testamento y este hecho no invalidaría el documento. Cuando el testador otorga un testamento ológrafo y legitima su firma ante notario, renuncia limitadamente a su derecho de mantener dicho testamento en secreto total.

El Código Civil no requiere la participación de testigos durante el otorgamiento de un testamento ológrafo, pero su presencia no invalida el testamento. González Tejera, op cit., pág. 163. Por el contrario, aunque no se requiere, la "presencia de testigos ayudaría mucho a aminorar los riesgos y las desventajas señalados anteriormente para el testamento ológrafo". Id. La "participación de testigos durante el otorgamiento del testamento ológrafo no afecta su validez, claro está, si se observan los requisitos establecidos en el artículo 637 del Código Civil para esta forma de testar". Ibíd.

Para que un testamento ológrafo sea ejecutorio, además de tener que cumplir con los requisitos del Art.

637 del Código Civil, tiene que ser adverado y protocolizado. Velázquez, op cit., pág. 167. Mientras un testamento ológrafo no es adverado y protocolizado, éste es un mero documento privado sin eficacia jurídica tras la muerte de su otorgante. González Tejera, op cit., pág. 145. Para procurar la validez de un testamento ológrafo como documento *mortis causa*, éste debe ser adverado y protocolizado. Id. Aunque en un testamento ológrafo se haya autenticado la firma del testador, este hecho no elimina la necesidad de cumplir con el procedimiento de adveración y protocolización provisto en el Art. 551A del Código de Enjuiciamiento Civil, supra. Según esta disposición, para la validez de un testamento ológrafo es necesaria la presentación del mismo al Tribunal de Primera Instancia. El licenciado De La Texera Barnés no niega esto. Su alegación es que la declaración de autenticidad de la firma del testador puede ser de gran ayuda en el trámite de adveración del testamento ológrafo.

El proceso de adveración de un testamento ológrafo se hace para comprobar la autenticidad e identidad del escrito como autografiado por la persona a quien se atribuye. González Tejera, op cit., pág. 154. "Sin dicho trámite, el testamento no logra su eficacia como tal". Id. Lo importante de este procedimiento es el convencimiento del tribunal "de que la letra y firma del manuscrito pertenecen a la persona a quien se le atribuye

su autoría". Id., pág. 155. Dicho convencimiento lo obtiene o no luego de "pesar el testimonio de los testigos que declaran no abrigar duda racional de que el testador redactó y firmó el manuscrito". Id. No obstante, el tribunal puede no quedar persuadido por estos testimonios, en cuyo caso puede solicitar prueba caligráfica. Id. Este procedimiento está "diseñado con el propósito de que el juez tenga suficientes elementos de juicio para poder concluir si el testamento es auténtico o no". Id., a la pág. 156.

El tribunal deberá comprobar la identidad del testamento con tres testigos que conozcan la letra y firma del testador y que declaren que no abrigan duda racional sobre su identidad. Este requisito va dirigido a corroborar que el documento presentado en efecto fue escrito y firmado por el causante. De no existir los testigos requeridos o de éstos tener dudas sobre la identidad del testamento, el tribunal podrá emplear exámenes periciales de letras. Además, después de justificar la identidad del testamento ológrafo, el tribunal debe ordenar la protocolización del mismo.

No se exime de este proceso al testamento ológrafo en el que un notario ha autenticado la firma del testador. La presunción de corrección que gozan los asientos notariales no puede utilizarse para obviar el proceso establecido en el Art. 551A del Código de Enjuiciamiento Civil, supra. Sin embargo, la constancia

TS-4190

de que el otorgamiento del testamento ológrafo fue presenciado por un notario puede ser de mucha ayuda en el proceso de adveración, como un testimonio de autenticación.

Sin embargo, debemos resaltar que para hacer un testamento ológrafo no se requiere la intervención de un notario. Además, el hecho de que un notario legitime la firma en un testamento ológrafo no prescinde del cumplimiento del proceso de adveración y protocolización del documento, una vez el testador fallezca. Es obligación de un notario informar sobre estas normas a un cliente que solicita la autenticación de su firma en un testamento ológrafo. Véanse, Art. 2 de la Ley Notarial, supra; In re Meléndez Pérez, 104 D.P.R. 770 (1976).

No hay nada en el expediente que indique o sugiera que el notario engañó o hizo representaciones falsas a los declarantes. Si el notario no le hizo creer a ninguno de los testadores que la declaración de autenticidad era requerida o compulsoria para la validez o adveración de su testamento ológrafo, no hay ninguna violación a la Ley Notarial. Distinto sería si el notario hubiera hecho creer a alguno de los otorgantes que la declaración de autenticidad era compulsoria o un prerrequisito para la validez de un testamento ológrafo. Si se limitó a sugerir la conveniencia de otorgar la declaración, el notario actuó dentro del marco legal. Incluso, puede que haya

TS-4190

ayudado a algún testador en caso de que surjan dudas sobre la autenticidad del testamento.

IV

Por los fundamentos antes expuestos, se le ordena a ODIN que apruebe los tomos 4 y 5 del Registro de Testimonios del Lcdo. José A. De La Texera, de no tener algún otro señalamiento.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re:

                          TS-4190

José A. De La Texera Barnés


SENTENCIA

En San Juan, Puerto Rico, a 10 de noviembre de 2009.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte integrante de la presente Sentencia, se le ordena a ODIN que apruebe los tomos 4 y 5 del Registro de Testimonios del Lcdo. José A. De La Texera, de no tener algún otro señalamiento.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Fiol Matta coincide con los señalamientos del Juez Presidente, aunque concurre con el resultado que exime al notario De La Texera Barnés de responsabilidad en esta ocasión porque no nos hemos expresado sobre esta práctica anteriormente. La Juez Asociada señora Rodríguez Rodríguez concurre con el resultado sin opinión escrita. El Juez Presidente señor Hernández Denton disiente con la siguiente expresión:

El Juez Presidente señor Hernández Denton disiente de la norma que se adopta en la Opinión del Tribunal por entender que, conforme lo señala la Oficina de Inspección de Notarías en su Informe,

la intervención de un notario para autenticar la firma en un testamento ológrafo atenta contra la naturaleza y características principales de este tipo de testamento, e incide sobre el proceso de adveración y protocolización indispensable para su validez. De las copias de los testamentos ológrafos involucrados en el presente caso surge que el notario dio fe de que el documento fue suscrito y escrito todo del puño y letra del testador ante él y de que no contiene palabras tachadas, enmendadas ni entre renglones. Es decir, la práctica avalada por el Tribunal en el día de hoy le permite al notario dar fe sobre los requisitos que son materia de evaluación durante el procedimiento de adveración que se lleva a cabo en el Tribunal de Primera Instancia. Tal proceder es contrario a nuestro ordenamiento civil y notarial.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo